[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 04 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16458

_____

D. C. Docket No. 06-00986-CV-T-17MSS

DALE J. MILLS,
C. DIANE MILLS,

Plaintiffs-Appellants,

versus

FOREMOST INSURANCE COMPANY,
a Michigan corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 4, 2008)**

Before BLACK, HULL and FAY, Circuit Judges.

HULL, Circuit Judge:

Plaintiffs Dale J. Mills and C. Diane Mills (the "Millses") appeal the district court's order granting Defendant Foremost Insurance Company's ("Foremost's") motion to dismiss their class action complaint. After review and oral argument, we reverse the district court's order and remand for further proceedings.

## I. BACKGROUND

### A. The Complaint's Allegations

In February 2006, the Millses filed a class action complaint against Foremost in Florida state court. According to the complaint, the Millses are Florida residents who own a mobile home that was insured by Foremost under a "Mobile Home Insurance Policy" (the "Policy").[1] In September 2004, Hurricane Frances damaged the Millses' home and personal property covered under the Policy. The Millses submitted a claim to Foremost under the Policy and received a loss payment that was less than they were entitled to. Specifically, Foremost failed to compensate the Millses for contractors' overhead and profit charges, and for state and local sales taxes on materials, incurred by the Millses in having their hurricane-damaged property repaired or replaced.[2] The complaint also alleges that

---

[1]The Policy is labeled "Form 3342 01/98."

[2]Although the language of the Millses' complaint suggests that they actually repaired or replaced their damaged property, the way the parties have framed the issue on appeal implies that the Millses submitted their claim to Foremost based on estimated, rather than expended, repair or replacement costs.

Foremost knowingly and unlawfully failed to pay overhead, profit, and taxes in Foremost's estimates of hurricane-damaged losses and failed to inform the Millses about Foremost's intention not to pay overhead, profit, and taxes under the Policy. We will refer to the unpaid overhead, profit, and taxes collectively as the "Withheld Payments."

The complaint alleges that Foremost (1) breached the terms of the Policy by failing to compensate the Millses for the Withheld Payments, and (2) unlawfully failed to inform them, before they purchased or renewed the Policy, of Foremost's intention not to pay the Withheld Payments.[3] The complaint seeks damages and declaratory and injunctive relief, both for the Millses themselves and on behalf of a class. The complaint defines the class as all of Foremost's mobile home insurance policyholders in Florida who, from August 1, 2004 onward, submitted to Foremost claims for hurricane damage to their mobile home or personal property caused by or arising from four hurricanes that struck Florida in August and September 2004 (Hurricanes Charlie, Frances, Ivan, and Jeanne).

**B.      Foremost's Rule 12(b)(6) Motion**

---

[3]The complaint originally sounded in breach of contract and breach of fiduciary duty, but the Millses later consented to the dismissal of the fiduciary duty claim.

Foremost removed the case to federal court and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Neither party filed a motion regarding class certification under Federal Rule of Civil Procedure 23. However, Foremost's Rule 12(b)(6) motion argued that class action treatment was inappropriate because common legal or factual questions would not predominate over individual issues.

In a November 15, 2006 order, the district court granted Foremost's 12(b)(6) motion. First, the district court held that the Millses lacked standing to bring their claims, either individually or as class representatives. It based this standing decision on its interpretation of the Policy. The court concluded that, to receive the Withheld Payments, the Millses must satisfy these preconditions in the Policy: (1) they must complete the repairs or replacement of the damaged property; (2) they must actually incur overhead, profit, and sales tax in connection with the repairs or replacement; and (3) they must make a further claim for any "additional costs" (including overhead, profit, and sales tax) incurred in repairing or replacing the damaged property. The district court concluded that (1) the Millses failed to allege that they had completed the repairs or replacement and made a claim for such repair or replacement costs, and (2) thus "they do not have standing to maintain individual claims, let alone class claims." Mills v. Foremost

4

Ins. Co., No. 8:06-CV-986-T-17, 2006 WL 3313945, at *2 (M.D. Fla. Nov. 15, 2006).

Second, the district court held that in any event the Millses' claims were inappropriate for class action treatment because "the individual inquiry of the facts surrounding the property damage claims of thousands of Foremost policy holders under thousands of separate insurance policies would predominate and overwhelm any common issue." Id. The district court dismissed the Millses' complaint and closed the case.[4] This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006) (brackets omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[4]In its motion to dismiss, Foremost argued, with respect to standing, only that the Millses lacked standing to represent a class. The district court sua sponte concluded that the Millses lacked individual standing as well and dismissed even the Millses' individual claims for breach of contract.

recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (quotation marks, citations, and brackets omitted). Furthermore, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level . . . ." Id. at ___, 127 S. Ct. at 1965.

A district court's decisions regarding class action suitability are reviewed for abuse of discretion. De Leon-Granados v. Eller & Sons Trees, Inc., 497 F.3d 1214, 1218 (11th Cir. 2007). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in [reaching its decision], or makes findings of fact that are clearly erroneous." Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1285 (11th Cir. 2007) (quotation marks and citation omitted).

## III. DISCUSSION

On appeal, the Millses contend that the district court erred in interpreting the Policy and then, on that basis, dismissing their complaint for lack of standing and inability to maintain a class action. We first review Florida law governing insurance contracts and then examine the Policy provisions in issue. Finally, we consider the class action suitability issue.

### A. Florida Law

Under Florida law, "[i]nsurance contracts are construed according to their plain meaning." State Farm Mut. Auto. Ins. Co. v. Reis, 926 So. 2d 415, 416 (Fla. Ct. App.), review denied, 939 So. 2d 94 (Fla. 2006); see also Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co., 412 F.3d 1224, 1227 (11th Cir. 2005) ("Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy."); Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 735 (Fla. 2002) ("When an insurance contract is not ambiguous, it must be given effect as written."). If the language lends itself to more than one reasonable interpretation, it is ambiguous and should be construed in the insured's favor and against the policy's drafter. Reis, 926 So. 2d at 416. In other words, ambiguous provisions in an insurance policy should be interpreted in favor of coverage for the insured. Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005).

**B.      The Policy**

The Millses' Policy defines "actual cash value," which is central to this dispute, as follows: "the cost to repair or replace property with new materials of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence." The Policy provides that when a policyholder suffers a

7

partial loss to an insured mobile home,[5] Foremost will pay benefits using one of

two methods: replacement cost or actual cash value. As explained below, both

methods reference the term "actual cash value."

Under the Policy's "Replacement Cost Payment Method," Foremost pays

the lowest of: (1) the "replacement cost" of the damage to the home; (2) the

"amount actually spent for necessary repair or replacement of the damaged

portion" of the home; or (3) the "Amount of Insurance shown on the Declarations

Page" of the Policy. The Policy further states that "[i]f the cost to repair or replace

the damaged property is more than $2,500, [Foremost] will pay no more than the

<u>actual cash value</u> of that damage until actual repair or replacement is completed."

Thus, under the Replacement Cost Payment Method, Foremost pays only the

actual cash value of the damage for claims over $2,500 until the actual repair or

replacement is completed. In other words, Foremost will pay up front an estimate

of the "actual cash value of th[e] damage" before the repairs are actually done.

The Policy also provides that the insured "may disregard the Replacement

Cost Payment Method" and make a claim on simply an "Actual Cash Value

Payment Method." If the policyholder elects the Actual Cash Value Payment

---

[5]For total losses, the Policy provides that Foremost will pay the policy limit, which it terms the "Amount of Insurance."

8

Method, he "may make further claim within 180 days after the loss for any additional cost . . . incur[red] in replacing the damaged property."[6]

Thus, under both payment methods, the Policy is clear that making the actual repairs first is not required in order to be paid the actual cash value of the damaged property. We see nothing in the language of the Policy that even suggests that if the Millses never repaired or replaced their property, they would not <u>for that reason</u> be entitled to compensation for the actual cash value of the damaged property.[7] Accordingly, the proper question becomes what is encompassed within the term "actual cash value" in the Policy.

As noted earlier, the Policy defines actual cash value as "the cost to repair or replace property with new materials of like kind and quality" less certain depreciation. The Policy does <u>not</u> say repair or replacement cost <u>less</u> depreciation <u>and profit, overhead, and taxes</u>, and, therefore, the costs of overhead, profit, and

---

[6]Under the Actual Cash Value Payment Method, Foremost pays the lowest of: (1) the "cost of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use"; (2) the "actual cash value of repairing or replacing" the damaged property, but only when the property "is actually repaired or replaced"; (3) when the damaged property is not repaired or replaced, the difference between the actual cash value of the property immediately before and immediately after the loss; and (4) the "Amount of Insurance shown on the Declarations Page." At this stage, the parties have not raised any issues about these Policy terms, and thus we do not discuss them.

[7]That is not to say that the Millses would necessarily be entitled to the Withheld Payments for an actual cash value claim. It means only that we cannot conclude that the Millses could not recover the Withheld Payments merely because they made an actual cash value claim and had not actually completed the repair or replacement of the damaged property.

taxes are not unambiguously excluded from actual cash value coverage. Thus, the inquiry narrows further to what is encompassed within "the cost to repair or replace property with new materials."

As to taxes, we easily conclude that "the cost to repair or replace property with new materials" would necessarily include the state and local taxes on the materials purchased to make the repairs.[8] Part of "the cost" of new materials is the taxes paid to purchase those materials.

As to the cost of installing the materials, Foremost does not dispute that general contractors routinely charge overhead and profit for their services, but argues (1) that not all hurricane repairs will necessarily require the services of a general contractor, and (2) that the Millses did not specifically plead that they needed a general contractor to repair their mobile home. In reply, the Millses point out that (1) a contractor's overhead and profit is routinely as much a part of the cost to repair as is the contractor's labor and materials costs, (2) that their complaint specifically alleges that Foremost failed to pay them for overhead, profit, and taxes incurred by them in repairing their mobile home, and (3) that

---

[8]Florida sales tax applies to the total cost of making repairs to mobile homes, including materials and labor. <u>See</u> Fla. Admin. Code Ann., Rule 12A-1.051, -1.006.

there is no support for Foremost's exclusion of a contractor's overhead and profit charges in the Policy's broad language of "cost to repair or replace property."

For several reasons, we agree that a contractor's overhead and profit charges are included within the "cost to repair or replace." First, the Policy definition of actual cash value does not exclude overhead and profit charged by contractors in their repairs or replacements or otherwise limit the type of repair or replacement costs covered by the Policy. Since a contractor's overhead and profit charges are well-recognized types of costs routinely charged, those items fall within the "cost to repair or replace." Second, the Millses contracted for the actual cash value of their loss and their recovery is not tied to actually making the repair or replacement, much less actually paying a contractor anything. Third, the issue of what is encompassed within the Policy language of "cost to repair or replace" is a separate and distinct issue from whether certain items of repair costs are reasonable and necessary. For example, the Millses could not obtain payment for roof materials unless they had roof damage and it was reasonably likely that roof materials would be needed to repair the damage, but that does not mean that roof materials in general are not part of "the cost to repair or replace [the] property." The same holds true for the services of a general contractor. The Millses would not be entitled to receive payment for any type of cost charged by a general

11

contractor without showing that they would be reasonably likely to need a general contractor for the repairs in issue. Thus, if the estimate of the cost to repair is by a general contractor that lists labor, materials, overhead, and profit, the question is the same for all of these items: whether it is reasonably likely that the policyholder would incur these costs in making the repairs.

Our conclusion in this regard comports with the weight of authority on the issue. A majority of courts considering the question under similarly drafted insurance policies has determined that an actual cash value payment includes a general contractor's overhead and profit charges in circumstances where the policyholder would be reasonably likely to need a general contractor in repairing or replacing the damaged property in issue. See Tritschler v. Allstate Ins. Co., 144 P.3d 519, 529 (Ariz. Ct. App. 2006); Salesin v. State Farm Fire & Cas. Co., 581 N.W.2d 781, 789-91 (Mich. Ct. App. 1998); Gilderman v. State Farm Ins. Co., 649 A.2d 941, 945 (Pa. Super. Ct. 1994).[9] Courts have reached the same conclusion with regard to sales tax on materials. See, e.g., Ghoman v. New Hampshire Ins. Co., 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) (holding that sales tax, as well as

---

[9]But see Snellen v. State Farm Fire & Cas. Co., 675 F.Supp. 1064, 1068 (W.D. Ky. 1987) (holding that, where the policyholder neither repaired or replaced his damaged property, nor evidenced an intent to do so, the insurance company properly deducted "non-damage factors which are applicable only in the instance of repair or replacement such as clean up, profit, overhead, and permits").

12

general contractors' overhead and profit charges, should be included in an actual cash value payment if it is "reasonably likely" that the insured would incur them if he repaired or replaced the covered loss). These results hold regardless of whether the insured actually repairs or replaces the property. Tritschler, 144 P.3d at 529; Ghoman, 159 F. Supp. 2d at 934-35; Gilderman, 649 A.2d at 945-46.[10]

Thus, for all of these reasons, we conclude that the district court erred in determining that preconditions in the Policy required the Millses to complete repair or replacement of their damaged property and to submit such a replacement cost claim in order to have standing and be entitled to recover the Withheld Payments.

The district court also erred in treating these particular insurance coverage issues under the Policy as standing issues. The complaint alleges that the Millses had a mobile home, that Foremost issued an insurance policy covering hurricane damage to the mobile home, that a hurricane damaged the Millses' mobile home, that the Millses made a claim under the Policy for those damages, and that Foremost paid less on the claim than the Millses contend they are owed. Thus, the

---

[10]As the Gilderman court reasoned, "the issue is not whether a given cost is contingent [and hence may never be incurred]. The issue is what State Farm agreed to pay to its insureds . . . ." 649 A.2d at 945. Moreover, the policyholder has paid for coverage under the policy and hence, "[i]t can hardly be said that an insured reaps a windfall by obtaining payment of actual cash value determined in a fair and reasonable manner when that is precisely what the insurer has agreed to pay under its policy in advance of actual repair or replacement." Id. at 946.

Millses clearly had standing to sue for damages under the Policy. See Wooden v. Bd. of Regents, 247 F.3d 1262, 1273-74 (11th Cir. 2001) (stating that standing is essentially a determination of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," and requires that a plaintiff have suffered a concrete, particularized injury that is caused by the challenged action of the defendant and can be redressed by a favorable court decision).

Whether the Withheld Payments were covered by the Policy is an issue of whether the Millses' complaint fails to state a claim for relief under the Policy–not a standing issue. Whether the Millses' complaint pled sufficient facts is likewise a failure-to-state-a-claim issue. We thus reject Foremost's standing arguments as to the Millses' individual claims against Foremost on this basis as well.

## C.    Class Action Standing

Having concluded that the Millses have stated a claim for the Withheld Payments, we next conclude the Millses have standing as putative class representatives. To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also "be part of the class and possess the same interest and suffer the same injury as the class members." Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting

14

Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364, 2370 (1982)). Put another way,

> [i]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.

Wooden, 247 F.3d at 1288 (quotation marks and citation omitted). The Millses have alleged two individual claims: (1) that Foremost breached the terms of the Policy by not compensating them for the Withheld Payments; and (2) that Foremost unlawfully failed to inform them, before they purchased or renewed their policies, of Foremost's intention not to make those payments. The two claims that the Millses have attempted to raise on behalf of a class are identical. Therefore, we conclude that with respect to each class claim, the Millses have standing not just individually, but also as putative class representatives.

Nonetheless, we stress that the fact that the Millses have standing as putative class representatives is an issue distinct from whether they qualify under Rule 23 to represent the class. See Wooden, 247 F.3d at 1288 ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as

15

defined by Rule 23(a), to assert the rights of others." (quotation marks and citation omitted)).  Thus, we now turn to the class certification issue.

## D.    Class Action Suitability

Federal Rule of Civil Procedure 23 governs class actions.  The Millses, to represent a class, must establish these four requirements in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).[11]  These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Prado-Steiman, 221 F.3d at 1278.  In addition to meeting Rule 23(a)'s requirements, parties seeking to represent a class must establish at least one of these three requirements in Rule 23(b):

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> > (A)  inconsistent or varying adjudications with respect to individual members of the class which would establish

---

[11]Effective December 1, 2007, the Federal Rules of Civil Procedure were amended to effect a "general restyling . . . to make them more easily understood and to make style and terminology consistent . . . ."  Fed. R. Civ. P. 1 advisory committee's note on 2007 Amendment. Except for a "very small number of minor technical amendments" not relevant here, the amendments were "intended to make no changes in substantive meaning."  Id.  In this opinion we quote the pre-amendment language of the rules, which was in effect when the district court issued its order.

incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b). In their complaint, the Millses expressly allege that they qualify as class representatives pursuant to each of the three different grounds that are authorized in Rule 23(b).

On appeal, the Millses challenge the district court's ruling that their claims are not appropriate for class action treatment because common issues would not predominate. The district court reasoned that "the individual inquiry of the facts surrounding the property damage claims of thousands of Foremost policy holders under thousands of separate insurance policies would predominate and overwhelm any common issue." Mills, 2006 WL 3313945, at *2. Thus, the district court's

17

order was based solely on the lack of common-issue predominance under Rule 23(b)(3).[12]

We conclude that the district court's ruling suffers from several errors. First, a lack of predominance under Rule 23(b)(3) does not automatically bar class certification because the putative class representative can still attempt to satisfy the requirements of Rule 23(a) and either Rule 23(b)(1) or (b)(2). In holding that the Millses' claims were inappropriate for class action treatment because common issues would not predominate, the district court either: (1) failed to recognize that the Millses' complaint alleged that they satisfied each of the three grounds for class certification authorized in Rule 23(b); or (2) confused common-issue predominance, which is required only for Rule 23(b)(3) class actions, with the Rule 23(a) requirements that all class actions must satisfy.

Additionally, and more fundamentally, the district court's class certification ruling was premature under the particular circumstances of this case. We recognize that Rule 23(c) instructs that the district court "must–at an early

---

[12]The Rule 23(b)(3) common-issue predominance inquiry reduces to whether "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004) (quotation marks and citation omitted). Additionally, common issues do not predominate "if, as a practical matter, the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of legal and factual issues." Id. (omission and alteration in original; quotation marks and citation omitted).

18

practicable time–determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). In some instances, the propriety vel non of class certification can be gleaned from the face of the pleadings. See, e.g., Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997) (concluding that Rule 23(b)(3)'s predominance requirement could not be satisfied, and that such failure was "readily apparent from a reading of the . . . complaint").

However, precedent also counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified. See Falcon, 457 U.S. at 160, 102 S. Ct. at 2372 ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); Huff v. N. D. Cass Co. of Ala., 485 F.2d 710, 713 (5th Cir. 1973)[13] (en banc) ("Maintainability may be determined on the basis of pleadings, but the determination usually should be predicated on more information

[13]Former Fifth Circuit decisions rendered before October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable." (quotation marks, citations, and footnotes omitted)).[14]

This is such a case where the class certification issue cannot be readily resolved by the complaint alone. Here, the parties' pleadings take starkly different positions as to the number and extent of issues that will be involved in this case, and the method and ease of proof for each. We outline the nature of the parties' contentions as they readily show that the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least.

The Millses' complaint contends that the common issue to all class members is whether Foremost improperly excluded overhead, profit, and taxes when paying the actual cash value of their hurricane damage losses. The Millses

---

[14]Several of our sister circuits have reversed denials of class certification that were made without opportunity for discovery, when the pleadings on their face did not show non-compliance with Rule 23 or when the satisfaction of the Rule 23 requirements may have depended on factual matters within the knowledge or possession of the defendant. See Parker v. Time Warner Entm't Co., 331 F.3d 13, 21-22 (2d Cir. 2003); Goodman v. Schlesinger, 584 F.2d 1325, 1332 (4th Cir. 1978); Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1972).

point out: (1) that Foremost's own adjusters already have prepared claims estimates of the repair costs for each class member's hurricane-damage claim; (2) that the plaintiffs accept Foremost's own adjusters' estimates as to the extent of each repair cost for each class member; and (3) that all that the class members seek to recover is a percentage of those cost estimates for overhead, profit, and sales tax line items, which they claim Foremost improperly excluded from its actual cash value payment to each class member insured with this same Policy who had not actually completed their repairs at the time of the actual cash value payment. The Millses argue that the amount due to each class member can thus be determined with relative ease through basic forensic accounting using Foremost's own claims data.[15]

Foremost, on the other hand, contends that individual issues will abound. Foremost argues that, even if an actual cash value payment does not require all work to be completed first, the issue of whether general contractor overhead and

_____

[15]In their complaint, the Millses anticipated that a "review [of] the Defendant['s] claims estimates in respect of the claims of the Plaintiffs and the Class Members" would be needed to "calculate the true amounts . . . of wrongfully withheld taxes, overhead and profit due on said estimates." In their response to Foremost's motion to dismiss, the Millses made even more clear their position that "[t]here will be no individualized proof problems because Plaintiffs are not contesting Foremost's assessment of damage in the claims that have already been processed," and that "[t]he questions posed by Plaintiffs in the present action will be answered the same for each aggrieved policyholder in the class[;] the only variance will be the dollar amounts that will be computed from Foremost's own preexisting data."

21

profit is properly owing to each of its insureds still depends on whether the services of a general contractor would be reasonably required under the circumstances. And, with respect to the sales tax issue, Foremost argues that there may be instances in which the insureds, depending on their individual circumstances, might buy materials but incur no sales tax. Thus, according to Foremost, in order to prevail each potential class member will still have to prove that he was likely to require the services of a general contractor, or to pay sales tax; therefore, thousands of claims files will have to be analyzed in depth and numerous legal and factual issues will arise as to each.

In response, the Millses stress that proof of whether a general contractor's services or sales taxes were reasonably likely to be incurred can be determined from the face of Foremost's own adjusters' estimates, which Plaintiffs accept, and through forensic review of Foremost's own adjusters' estimates. The Millses contend that industry professionals make such determinations every day in the course of their adjusting duties. The Millses assert that the class's acceptance of the damage estimates of Foremost's own adjusters for purposes of their lawsuit obviates the need to painstakingly analyze each class member's individual circumstances.

22

The parties' disputes as to issues and proof cannot be resolved simply by reviewing the face of the Millses' complaint but warrant, at a minimum, production and examination of a representative sample of the estimates of Foremost's adjusters, which Plaintiffs have accepted as accurate but for the Withheld Payments. That being the case, the district court abused its discretion in determining, at this complaint-pleading stage in the litigation, that class action treatment of the Millses' claims is inappropriate. Given the vastly differing claims of the parties about the relative ease and practicability of calculating overhead, profit, and sales tax from Foremost's estimates and resolving liability, the Millses at least should have been granted an opportunity to conduct limited discovery relevant to the certification issue and thereafter the court should have determined whether an evidentiary hearing was needed to enable the district court to make any necessary factual findings.

Accordingly, we conclude only that the district court erred in determining that class action treatment was inappropriate as a matter of law from the face of the Millses' particular complaint, and we remand for further proceedings. In so holding, we express no opinion as to whether class certification is or is not appropriate in this case.

## IV. CONCLUSION

23

For the reasons set forth above, we reverse the district court's order, dated November 15, 2006, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**