[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10817
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-02799-TWT

SANDRA GRAY,

Plaintiff - Appellant,

versus

THE CITY OF ROSWELL,
PATRICK C. FERDARKO,
BRANDON CRAWFORD,
NICK MARIANI,

Defendants - Appellees.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 13, 2012)

Before BARKETT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff, Sandra Gray, filed suit pursuant to 42 U.S.C. § 1983 against the City of Roswell, ("City") Georgia, and Officers Patrick Ferdarko, Brandon Crawford, and Nick Mariani ("Officers," collectively with the City, "Defendants") claiming violations of her Fourth and Fourteenth Amendment rights. Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Gray filed a Motion for Partial Summary Judgment. The district court granted Defendants' motion and dismissed Gray's motion as moot. After reviewing the Complaint and the parties' briefs we affirm the district court as to the City, but we reverse the district court's dismissal of the claims against the Officers.

## I. Background[1]

This suit arises from the Officers' response to a dispute at Gray's home. Gray permitted Gregory Pompelia to reside in her home as a guest while he recovered from surgery because he was homeless. Gray alleges in her complaint that there was no formal agreement between herself and Pompelia. Instead, they had an oral agreement which required Pompelia to exhibit good behavior and contribute a modest sum to household expenses.

In January 2011, Pompelia began to exhibit poor behavior, and Gray

---

[1] Because this is an appeal from a motion to dismiss, we take all facts pleaded in the complaint as true and construe the facts in the light most favorable to Gray. *See Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

2

ordered him to leave her home.  Pompelia refused.  On February 9, 2011, Gray changed all the locks on her home and carefully removed all of Pompelia's things from her home.  She put all of his property in the back of a pickup truck and covered it with a tarp to protect it from the elements.  She specifically alleges that she did not damage any of Pompelia's property in the process.

When Pompelia returned to Gray's home and found that he could not enter the premises, he called the Roswell police department.  Officers Ferdarko, Crawford, and Mariani responded to the call.  When Gray saw the officers approaching her home, she opened her front door and advised the officers that the dispute between herself and Pompelia was a "civil matter."  At some point during the dispute, Gray gave permission for Ferdarko to enter her home.

Inside her home, she explained to Ferdarko that Pompelia was only a guest and that she did not want Pompelia in her home because she felt that Pompelia was a threat to her and her property.  Ferdarko insisted that she must let Pompelia back into her home.  Ferdarko informed Gray that unless she let Pomopelia back into her home, Ferdarko would arrest her.  Gray, informing the officers that she was an attorney and knew her rights, stated that this was a purely civil matter, not a criminal matter, and that the officers had no right to force her to permit Pompelia back into her home.

3

One of the officers then exited the home and asked Pompelia to make a list of property that Gray had damaged. Pompelia claimed that Gray had caused $5,600.00 worth of damage to his property. Gray then specifically alleges in her complaint (1) "That Defendants did not see any damage to the property, and did not inspect the property that was in the back of Plaintiff's truck" and (2) "That by Defendant Ferdarko's own admission, in his incident report, the alleged list of damaged property included items which Ferdarko states he saw, and that he saw no damage to said items." Still, Ferdarko trusted Pompelia and arrested Gray on the charge of felony criminal damage to property. The Officers then permitted Pompelia to remain in Gray's home while she was in jail.

## II. Standard of Review

We review *de novo* a district court's grant of a motion to dismiss. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). The plaintiff need only plead facts that permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard" requires a plaintiff to only show "more than a sheer possibility that a

4

defendant has acted unlawfully." *Id.*

### III. Claim Against the City of Roswell

Gray claims that (1) the City failed to properly train the Officers, (2) the Officers actions were within the policy, practice, custom, or procedure of the City, (3) the City ratified the Officers' conduct, and (4) all City officers routinely violate the Fourth and Fourteenth Amendments.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court explained the boundaries of municipal liability under § 1983. A municipality may only be held liable for the actions of law enforcement officers when official policy or custom causes the constitutional violation. *Id.* at 694, 98 S. Ct. at 2037–38. Gray does not recite any facts or policies which would support a claim against the City. Gray only makes "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678, 126 S. Ct. at 1949. This is not sufficient to survive a motion to dismiss, and the district court properly dismissed the claims against the City.

### IV. Claim Against the Officers

The district court found that the Officers were protected from Gray's claims by qualified immunity. An officer is not entitled to qualified immunity when,

5

acting in his discretionary capacity, he violates clearly established constitutional or federal law of which a reasonable person would have known. *See Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000). When responding to Pompelia's call, the Officers were acting in their discretionary capacity as law enforcement officers. Therefore, our analysis focuses on whether Gray's Complaint alleges facts sufficient to support a claim that the Officers violated clearly established law. *See Rehberg v. Paulk*, 611 F.3d 828, 838–39 (11th Cir. 2010). We decide whether the facts alleged in the Complaint show a violation of clearly established law by "(1) defining the official's conduct, based on the record and viewed most favorably to the non-moving party, and (2) determining whether a reasonable public official could have believed that the questioned conduct was lawful under clearly established law." *Koch* at 1295–96 (footnote omitted).

"A warrantless arrest is constitutionally valid only when there is probable cause to arrest." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (citing *United States v. Watson*, 423 U.S. 411, 417, 96 S. Ct. 820 (1976)). An officer has probable cause to arrest if the "arrest is objectively reasonable based on the totality of the circumstances." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). An arrest is objectively reasonable when "the facts and circumstances within the officer's knowledge, of which he or she has *reasonably trustworthy*

6

information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." *Id.* (emphasis added). An officer may not "conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts." *Id.* at 1229 (finding that information that could be uncovered by searching a truck for drugs and interviewing available witnesses constituted "easily discoverable facts"). Although an officer is not required to eliminate every theoretical possibility, an officer may not "turn[] a blind eye to immediately available exculpatory information." *Id.* at 1229 n. 10.

Here, the Officers must show that they had probable cause to arrest Gray for criminal damage to property. In Georgia, criminal damage to property in the second degree occurs when a person "(1) Intentionally damages any property of another person without his consent and the damage thereto exceeds $500.00; or (2) Recklessly or intentionally, by means of fire or explosive, damages property of another person." O.C.G.A. § 16-7-23. The Officers only basis for asserting probable cause to arrest Gray was Pompelia's claim that Gray caused $5,600.00 worth of damage to his property. Gray alleges in her Complaint that she carefully removed Pompelia's property from her house and did not damage any of his property. She further alleges that at the time of her arrest Ferdarko knew that at least some of the property that Pompelia claimed was damaged was not actually

7

damaged.  Assuming that this is true and drawing all inferences in favor of Gray, as we must, the Officers knew of exculpatory evidence and "failed to investigate both sides of the story." *Kingsland*, 382 F.3d at 1229.  The Officers, after learning that some of the property was not damaged, were no longer justified in relying solely on Pompelia's claims.  At that point, a reasonable officer would, at the very least, further investigate to see if Gray had actually damaged any property.  This is especially true when the investigation into the allegedly damaged property only required the Officers to ask Pompelia to show them his damaged property.  *See id.* It is a reasonable inference from the Complaint that the Officers had reason to believe that Pompelia was not providing "reasonably trustworthy information." Therefore, the Officers did not have probable cause to arrest Gray until they verified some of Pompelia's statements.  Thus, at this stage of the proceedings, the Officers are not entitled to qualified immunity.[2]

## V. Conclusion

We affirm the grant of the motion to dismiss as to the City.  We reverse the granting of the motion to dismiss as to the Officers, because based on the

---

[2] Both parties make arguments regarding the exclusive method that a landlord may use to evict a tenant under O.C.G.A. § 44-7-50 *et seq.*  However, these arguments are irrelevant, because to be eligible for qualified immunity the Officers must show that they had probable cause to arrest Gray for criminal damage to property in the second degree, O.C.G.A. § 16-7-23.

Complaint, Gray "state[d] a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).

**AFFIRMED IN PART AND REVERSED IN PART.**