[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12499
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-22034-KMW


VIBO CORPORATION, INC., d.b.a. General Tobacco,

Plaintiff-Appellant,

versus

US FLUE-CURED TOBACCO GROWERS, INC.,
PREMIER MANUFACTURING, INC., and
HOBART ANDERSON,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 20, 2019)

Before TJOFLAT, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

In 1998, many states agreed to a Tobacco Master Settlement Agreement (the "Master Agreement") with the four largest tobacco manufacturers in the United States.  The Master Agreement resolved lawsuits that the states had filed against the tobacco manufacturers, and it allowed other tobacco manufacturers to join the Master Agreement at a later time.  By 2006, General Tobacco, US Flue-Cured Tobacco Growers, and Premium Manufacturing (we refer to US Flue-Cured Tobacco Growers and Premium Manufacturing collectively as the "Tobacco Company Defendants") were all members of the Master Agreement.  Under the Master Agreement, the member tobacco companies had various obligations.

General Tobacco claims that, from 2006 to 2010, the Tobacco Company Defendants worked with confidential informants and agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") to deprive General Tobacco of its 2% market share.  At the time, the ATF was secretly investigating various tobacco manufacturers and distributers.  As part of this investigation, the Tobacco Company Defendants were allowed to sell cigarettes to the ATF.  They allegedly sold these cigarettes to the ATF on favorable terms, in part, by ignoring their obligations under the Master Agreement.[1]  Then, the ATF would sell the cigarettes back to one of its confidential informants, and the Tobacco Company

---

[1] According to the Complaint, the Tobacco Company Defendants should have either paid excise taxes on the transactions or they should have contributed to the Master Agreement with each transaction.

2

Defendants supposedly would rebate the cigarettes that were sold back to the confidential informants. This rebate allowed the Tobacco Company Defendants to offer cheaper prices and to flood the market. In turn, the Tobacco Company Defendants acquired General Tobacco's market share.

General Tobacco sued the Tobacco Company Defendants for unjust enrichment and unfair competition under Florida law.[2] The District Court dismissed the claims because the statute of limitations had run on each claim. Alternatively, the District Court held that General Tobacco failed to state a claim for unjust enrichment and unfair competition. General Tobacco appealed.

Because we find that General Tobacco failed to state a claim upon which relief could be granted, we affirm the District Court.[3]

## I.

The District Court dismissed the complaint because it failed to state a claim, and we review that dismissal *de novo*. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). "We accept the factual allegations in the complaint as true

---

[2] General Tobacco also brought a *Bivens* claim against Hobart Anderson. Mr. Anderson was served with the Complaint but never responded. Thus, the District Court directed the clerk to enter default against Mr. Anderson, and it directed General Tobacco (1) to file a motion for default judgment by June 1, 2018, or (2) to show cause why its claim against Mr. Anderson should not be dismissed for lack of prosecution. General Tobacco did neither and instead appealed the judgment in favor of the Tobacco Company Defendants. The District Court then administratively closed the case.

[3] Thus, we need not consider the District Court's holding that General Tobacco's claims are barred by the statute of limitations.

and construe them in the light most favorable to the plaintiff." *Echols v. Lawton*, No. 17-13843, 2019 WL 324550, at *2 (11th Cir. Jan. 25, 2019) (citing *Mills*, 511 F.3d at 1303). "To survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II.

We consider each claim separately.

## A.

There are three elements for an unjust enrichment claim under Florida law: "(1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. Dist. Ct. App. 2011) (citing *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672 (Fla. Dist. Ct. App. 2000)).

General Tobacco has not plausibly alleged that it conferred a benefit upon the Tobacco Company Defendants. To satisfy the first element, the Supreme Court of Florida has said that "the plaintiff must directly confer a benefit to the

4

defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (citing *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996)). General Tobacco alleges only that, "By joining the [Master Agreement], [General Tobacco] provided specific and tangible economic and monetary benefits to [the Tobacco Company Defendants], which both accepted, and, in turn, were required to cooperate with [General Tobacco] regarding the objectives of the [Master Agreement], and were obligated to refrain from engaging in deceptive and fraudulent business schemes directed toward [General Tobacco]." But General Tobacco doesn't say what those monetary and economic benefits are. This is the sort of element-related conclusion that *Iqbal* rejects.

Elsewhere, General Tobacco alleges that the Tobacco Company Defendants engaged in a scheme to "deprive" General Tobacco of its market share. And it also alleges that the Tobacco Company Defendants "deceitfully and surreptitiously" *took* General Tobacco's market share. Even construing the allegations in General Tobacco's favor, we cannot see any benefit that General Tobacco directly conferred on the Tobacco Company Defendants. Instead, General Tobacco seems to allege that the Tobacco Company Defendants improperly took something that belonged to General Tobacco.

General Tobacco fails to state a claim for unjust enrichment.

5

B.

General Tobacco bases its claim of unfair competition on a theory of tortious interference with a business relationship. "Under Florida law, the elements of an interference with a business relationship claim are: (1) the existence of a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 432 So.2d 148, 151 (Fla. Dist. Ct. App. 1983), *aff'd in relevant part*, 463 So.2d 1126, 1127 (Fla. 1985)).

General Tobacco has not plausibly alleged facts that would satisfy the first or third elements. The first element "require[s] a relationship with a particular party." *Id.* General Tobacco alleges that the Tobacco Company Defendants' "deception and fraud was designed to have, and did have, the effect of intentionally interfering with the contractual and/or business relationships [General Tobacco] enjoyed with the distributors and retailers of its products in the markets of Tennessee and Georgia." But General Tobacco doesn't say who these distributors and retailers are. Nor does it say anything specific about the nature of these relationships. It doesn't mention any specific rights that flow from the

relationships.  And finally, General Tobacco doesn't explain how the Tobacco Company Defendants interfered with these relationships.

Really, General Tobacco seems to be saying that the Tobacco Company Defendants' allegedly illegal practices diluted their market share.  But its market share alone is insufficient to satisfy the first element.  *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) ("However, it is equally clear that Georgetown's relationship with its past customers was not one upon which a claim for tortious interference with a business relationship could be based. . . . The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim.").

General Tobacco fails to state a claim for unfair competition.

## III.

The judgment of the District Court is

**AFFIRMED.**

7