[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11410

Non-Argument Calendar

_____

ANGELIA LACY,

Plaintiff-Appellant,

versus

CITY OF HUNTSVILLE ALABAMA,
an Alabama Municipal Corporation,

Defendant-Appellee,

HUNTSVILLE CITY COUNCIL, et al.,

Defendants.

—————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:20-cv-00289-LCB

—————————————

Before BRANCH, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

Angelia Lacy appeals the district court's dismissal of her Title VII claim of sex discrimination against her former employer, the City of Hunstville ("the City").[1] Lacy, a fixed route bus driver for the City, was terminated for a pattern of unsafe driving. Lacy's complaint alleged that the City discriminated against her by using one standard to terminate her and another standard to terminate a male employee, Reuben Smartt. In particular, Lacy alleged that while the City followed its policy of accepting a disciplinary hearing officer's finding of facts when it terminated Smartt, it did not do so when it terminated her.

The district court dismissed Lacy's sex discrimination claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court concluded that the exhibits attached to Lacy's amended complaint established that Smartt was not a valid

---

[1] Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1).

comparator and that Lacy's amended complaint did not allege any other facts giving rise to an inference of sex discrimination. After review, we agree with the district court that the allegations in Lacy's amended complaint are insufficient to create a plausible inference of sex discrimination and affirm the district court's dismissal on that basis.[2]

## I.  BACKGROUND

### A.    Lacy's Notice of Disciplinary Action for Unsafe Driving

Lacy's amended complaint alleged these facts. On August 22, 2018, while driving a city bus, Lacy had to stop suddenly because a truck traveling ahead of her bus abruptly stopped. As a result of the abrupt stop, one or more bus passengers (who were not wearing seatbelts) were injured.

The City requested a formal disciplinary hearing because it was considering suspending, demoting, or terminating Lacy. J. Thomas Brown, the Director of Public Parking and Transit, signed the City's request.  That request stated that the City was considering disciplinary action for violations of these sections of the City of Huntsville Policies and Procedures Manual: (1) 13.5(C) incompetence, malfeasance, or misfeasance in the performance of duties, (2) 13.5(D) neglect or inefficiency in the performance of

---

[2] We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quotation marks omitted).

duties, (3) 13.5(L) disregard of safety rules and regulations, and (4) 13.5(AA) habitual, or repetitive acts of misconduct, violations of policy, and/or infractions of rules and regulations.

According to the City's request, Lacy had indicated to law enforcement officers, the Fixed Route Coordinator, and Director Brown at the scene that the incident was caused by a truck pulling out in front of her bus. Video evidence from her bus, however, showed that the incident occurred because the driver of the truck slowed and made a brief stop. The City's request claimed that Lacy made no attempt to slow down even though the video showed ample time and distance to slow down and stop for the truck.

The City's request also stated that Lacy had been involved in three prior incidents of unsafe driving since September 2013: (1) on September 3, 2013, she received a written warning for passing buses, (2) on August 8, 2014, she was suspended for ten days for not stopping at a railroad crossing, turning right without stopping, and not activating 2-way flashers, and (3) on November 2, 2017, she received a written warning and was required to take a refresher defensive driving course for a preventable accident in which Lacy struck the left rear side panel of a truck that had stopped in front of her bus.

## B.    Hearing Officer's Findings of Fact

A hearing was held on November 8, 2018 before a hearing officer, whose role was to determine the facts of the most recent

bus incident.  After the hearing, the hearing officer issued Findings of Fact, which Lacy attached to her amended complaint.

In the Findings of Fact, the hearing officer found, *inter alia*, that: (1) "[i]n order to avoid hitting a pick-up truck that came to an improper stop in front of the Employee's bus without sufficient warning, the Employee applied the bus brakes," (2) Lacy's description of the incident given at the scene was "not 100 percent accurate after viewing the video" in that "the truck turning onto [the street] did not cause the Employee to brake," and (3) instead "the truck's sudden and improper stop . . . caused the Employee to apply the bus brakes."

As to the video evidence, the hearing officer found it proved that "the Employee did not reduce her speed upon seeing the truck," that "the pick-up truck improperly stopped in the road without any signal of a turn causing the Employee to apply her brakes to avoid a collision" and that the "truck's stop was not gradual."  However, the video did "not clearly show the Employee had ample time and distance to slow down and stop for the truck," as the City's request claimed.  The hearing officer found that there was "substantial legal evidence regarding the Employee's [past] unsafe driving occurrences."

## C.    Lacy's Termination

After considering the hearing officer's Findings of Fact, Director Brown issued a supplemental notice of disciplinary action advising Lacy that the appropriate discipline for her improper

6                    Opinion of the Court                    21-11410

conduct was termination.    Lacy attached Director Brown's
supplemental notice to her amended complaint.

In the supplemental notice, Director Brown found that Lacy
had violated all four provisions of the City's Policies and
Procedures Manual cited in the request for a formal hearing.
Director Brown cited the following findings by the hearing officer:

> The hearing officer found that there was substantial
> legal evidence "of a pick-up truck turning west out of
> a parking lot onto Longwood at an undetermined
> distance from the Employee's bus.    However, the
> truck's pulling out onto Longwood did not cause the
> Employee to have to slam on the brakes to avoid a
> collision."    You did in fact slam on the brakes causing
> several passengers to have injuries and causing one to
> come out of his seat.    The Hearing Officer further
> found that "[t]he video is proof the employee did not
> reduce her speed upon seeing the truck."    He
> additionally found that there is substantial legal
> evidence regarding your past driving occurrences.

Director Brown concluded that the August 22, 2018 incident was
Lacy's "fourth in a series of unsafe driving occurrences" and that
her "pattern of unsafe driving habits" posed an undue risk to
passengers.    Director Brown stressed that Lacy had "been given
many opportunities to improve [her] safety performance and
driving habits to no avail."

Director Brown stated that "[t]he City's Personnel Policies
and Procedures Manual provides that the Mayor or Department

Head, subject to the approval of the Mayor, shall determine whether the facts, as found by the Hearing Officer, are cause for discipline," and that Brown had found "that the appropriate discipline, which is consistent with the Findings of Fact, is termination from your position as a Fixed Route Driver and termination from the City of Huntsville."

### D.    City Council's Vote to Uphold Termination

Lacy appealed her termination to the City Council. On February 28, 2019, the City Council voted to uphold her termination. Lacy attached to her amended complaint a letter from the City Council advising her of the City Council's decision.

Lacy's amended complaint alleged that the hearing officer's Findings of Fact in her case "concluded that [she] committed no wrong in bringing her bus to a sudden stop on August 22, 2018" and that the City Council should have accepted the hearing officer's Findings of Fact in reviewing her termination but refused to do so.

### E.    Comparator Smartt's Termination

As to the purported comparator, Lacy's amended complaint alleged that on May 24, 2018 the City Council, in reviewing the termination of Smartt, a male City employee, had accepted the hearing officer's Findings of Fact in Smartt's case. Lacy attached to her amended complaint the hearing officer's Findings of Fact and a transcript excerpt from the City Council's hearing in Smartt's case.

According to the hearing officer's Finding of Facts, Smartt was an Equipment Operator III in the sanitation division of the City's Public Works Department. Smartt was terminated for failing to maintain a commercial driver's license, which was required in order to perform his job. At Smartt's hearing, it was undisputed that Smartt needed, but did not currently have, a CDL to perform his job and that he was unable to perform any other jobs in the Public Works Department because of physical restrictions from an occupational physician.

At the City Council's hearing reviewing Smartt's termination, the attorney for the City Council stated that the City Council did not "have the discretion to find errors in the Finding of Facts," had to "accept the Hearing Officer's decision as the facts of the case," and the City Council's role was "to look at the facts, as found by the Hearing Officer, and then look at the decision of the Department head and decide if that is consistent with the facts found."

In her amended complaint, Lacy alleged that the City discriminated against her because of her sex in violation of Title VII. Specifically, Lacy alleged that the City, "by and through the Huntsville City Council, engaged in unlawful employment practices and discriminated against [her] because of her sex . . . by using one standard in the termination of her by the Finding of Fact,

and a different standard in the termination of a male, by abiding by the Finding of Fact."[3]

## II.  DISCUSSION

### A.    Rule 12(b)(6) Standards for Discrimination Claims

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, which, accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted, alterations adopted).  A written exhibit attached to a pleading is considered part of the pleading. *See* Fed. R. Civ. P. 10(c).  In fact, if an exhibit contradicts the allegations of the pleading, the exhibit governs. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

---

[3] Lacy's initial complaint asserted claims against multiple defendants, but she later voluntarily dismissed her claims against all defendants except for the City.  In her amended complaint, Lacy asserted a Title VII discrimination claim and three breach of contract claims against only the City, all of which the district court dismissed.

On appeal, however, Lacy does not challenge the dismissal of her three contract claims and thus has abandoned them. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  Therefore, we discuss only Lacy's Title VII sex discrimination claim.

Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of, among other things, such individual's sex.  42 U.S.C. § 2000e-2(a)(1).  At the summary judgment stage, a Title VII plaintiff may prove a claim of disparate treatment in one of two different ways.  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  First, a plaintiff may show a prima facie case, that is, that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated individual outside of her protected class.[4]  *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (*en banc*).  Second, and alternatively, a plaintiff may present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination."  *Smith*, 644 F.3d at 1328 (quotation marks omitted).  If the plaintiff satisfies this second standard, "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case."  *Id.*

---

[4] For purposes of a prima facie case, an employee is "similarly situated" to the plaintiff when both are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226.  Ordinarily, this means that a similarly situated employee will: (1) have engaged in the same basic misconduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have had the same supervisor as the plaintiff; and (4) share the plaintiff's employment or disciplinary history.  *Id.* at 1226-27.

21-11410          Opinion of the Court          11

At the pleading stage, however, a plaintiff need not plead a *prima facie* case of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 999 (2002); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). Rather, to state a claim under Title VII, a complaint need only "set out enough factual content to allow a court to draw the reasonable inference" that the defendant is liable for the alleged sex discrimination. *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1023 (11th Cir. 2016) (quotation marks omitted, alterations adopted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,"—in a Title VII case the mere possibility of unlawful discrimination—the complaint has failed to allege enough factual content to show the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679.

## B.    Lacy's Sex Discrimination Claim

Here, the district court did not err in concluding that Lacy's amended complaint failed to state a claim. The factual allegations in Lacy's amended complaint, which include the exhibits attached thereto, do not raise a reasonable inference of sex discrimination.

The only basis of discrimination alleged in Lacy's amended complaint was her proposed male comparator. Even accepting Lacy's allegations as true, she and her proposed male comparator, Smartt, were not "similarly situated" yet treated differently.

First, the exhibits attached to Lacy's amended complaint affirmatively demonstrate that she and Smartt were not being disciplined for the same or similar misconduct, did not share a similar disciplinary history, did not have the same supervisor or work in the same department, and were both terminated from their respective positions. And, in both cases, the City Council voted to uphold their terminations.

Second, and more importantly, the exhibits contradict Lacy's allegations that the City Council treated her less favorably than Smartt during their respective appeals by refusing to accept her hearing officer's Findings of Fact. Although Lacy's amended complaint alleged that the hearing officer "found" she "committed no wrong" during the August 22, 2018 incident, the hearing officer's Findings of Fact conclusively demonstrate that the hearing officer drew no conclusions about wrongdoing. See Griffin Indus., Inc., 496 F.3d at 1206. As the hearing officer stated in his Findings of Fact and the attorney advised the City Council during Smartt's hearing, the hearing officer's role in the disciplinary process was to find facts, not draw ultimate conclusions.

To be sure, the hearing officer in Lacy's case found that (1) the truck suddenly and improperly stopping caused Lacy to apply the brakes to avoid a collision and (2) the video did not clearly show (as Director Brown had claimed in the City's request for a formal disciplinary hearing) that Lacy "had ample time and distance to slow down and stop." But the hearing officer also found that the truck turned into Lacy's lane "at an undetermined

distance" in front of her bus and that she "did not reduce her speed upon seeing the truck" turn into her lane.

Moreover, Director Brown's supplemental notice of disciplinary action, advising Lacy of her termination, indicates that the City's decision to uphold her termination relied on, rather than refused to accept, the hearing officer's Findings of Fact. Specifically, Director Brown's supplemental notice cited several of the hearing officer's fact findings, including that (1) the truck turned onto the road "at an undetermined distance from [Lacy's] bus," (2) "the truck's pulling out . . . did not cause [Lacy] to have to slam on the brakes," (3) that Lacy failed to slow down when she first saw the truck pull into her lane, and (4) she had three prior incidents of unsafe driving for which she already had been disciplined. Director Brown concluded from these fact findings that Lacy's action in slamming on the brakes and causing injuries was unsafe.

In sum, the exhibits attached to Lacy's amended complaint affirmatively show that the City did not refuse to accept the hearing officer's Findings of Fact in her case. Thus, her amended complaint failed to allege that she was treated less favorably than a similarly situated individual outside of her protected class. Given that Lacy's amended complaint did not allege any other facts, much less a mosaic of circumstantial evidence, from which the court could reasonably infer more than the mere possibility that the City discriminated against her because of her sex, the district court properly dismissed her Title VII discrimination claim under Rule

14                    Opinion of the Court                    21-11410

12(b)(6). *See Iqbal*, 556 U.S. at 679; *Catastrophe Mgmt. Sols.*, 852 F.3d at 1023.

**AFFIRMED.**