[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13253
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cv-02327-JSM-TBM


MARISELA HERRERA,
LUZ SANCHEZ,
NICHOLAS ACOSTA,
PENNY WOLLMEN,
individually and on behalf of others
similarly situated,

Plaintiffs–Appellants,

versus

JFK MEDICAL CENTER LIMITED PARTNERSHIP,
d.b.a. JFK Medical Center,
HCA HOLDINGS, INC.,
MEMORIAL HEALTHCARE GROUP, INC.,
d.b.a. Memorial Hospital Jacksonville,
NORTH FLORIDA REGIONAL MEDICAL CENTER, INC.,

Defendants–Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 26, 2016)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs brought this putative class action alleging that Defendant HCA Holdings, Inc. and three of its Florida hospitals, Defendants JFK Medical Center, Memorial Hospital Jacksonville, and North Florida Regional Medical Center, Inc. (collectively, "Defendants"), charged unreasonable fees for emergency radiological services, including CT scans, MRIs, ultrasounds, and x-rays.  On Defendants' motion, the district court struck Plaintiffs' class action allegations, effectively denying class certification.  We granted Plaintiffs' interlocutory appeal.  *See* Fed. R. Civ. P. 23(f).  After careful review, we reverse.

## I.    <u>Background</u>

Under the Florida Motor Vehicle No-Fault Law, Fla Stat. § 627.730 *et seq.*, owners of motor vehicles registered in the State of Florida are required to purchase personal injury protection ("PIP") insurance coverage of $10,000.  § 627.736(1). PIP insurance policies cover 80% of all reasonable and necessary medical expenses related to a motor vehicle accident, including charges for x-ray services. § 627.736(1)(a).  But once PIP insurance pays the $10,000 policy limit, the insured is responsible for any remaining expenses if he does not have other applicable insurance coverage.  § 627.736(5)(a)(4).  Medical providers are allowed to charge

2

"only a reasonable amount . . . for the services and supplies rendered. . . . However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies." § 627.736(5)(a).  A "reasonable amount" is determined with the aid of "evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages." *Id.*

Plaintiffs allege that Defendants charge PIP-covered patients who receive treatment after motor vehicle accidents unreasonable fees for radiological services. In fact, these fees are up to 65 times higher than the usual and customary fees charged to non-PIP patients for similar radiological services.  Because PIP insurance covers only 80% of patients' bills (up to $10,000), the patients' 20% share is more expensive than it would be under the usual and customary rate.  And Plaintiffs allege that "the exorbitant and unreasonable charges prematurely exhaust the PIP coverage available to Plaintiffs, resulting in Plaintiffs having to pay out of pocket for additional medical services that would otherwise have been covered under PIP."

Specifically, the amended complaint alleges that each plaintiff received a CT scan of his or her brain.  Herrera and Sanchez were charged $6,404 at JFK Medical

3

Center in Atlantis, Florida, while Acosta was charged $6,277 at Memorial Hospital

Jacksonville and Wollmen was charged $6,140 at North Florida Regional Medical

Center in Gainesville.  Plaintiffs also received CT scans of their spines.  Herrera

and Sanchez were charged $5,900 each, Acosta was charged $6,965, and Wollmen

was charged $6,853.  The Florida Medicare rate for a brain CT scan ranges from

$164 to $169, and for a CT scan of the cervical spine it ranges from $213 to $220.

Defendants charge uninsured patients anywhere from $1,596 to $3,464 for a CT

scan.  Plaintiffs thus allege that Defendants charged them fees far in excess of what

it usually and customarily charges the uninsured or private, non-PIP insurers,

including insurers who do not have a contract with Defendants.

As to x-rays, Herrera received a lumbar spine x-ray at a cost of $3,359.

Herrera and Sanchez each received a thoracic spine x-ray at a cost of $2,222, and

Wollmen received one for $1,454.  The Florida Medicare rate for a lumbar spine x-

ray is $50, and for a thoracic spine x-ray it is $40.  Plaintiffs further allege that the

rates they were charged greatly exceeded the amounts typically billed and paid by

private, non-PIP insurers or uninsured patients.  Plaintiffs contend that all of these

rates were unreasonable as a matter of law.

As a result of these fees, Plaintiffs exhausted their $10,000 PIP insurance

policies and were left with medical bills that would have been covered in full or in

4

part had Defendants not charged these unreasonable rates.  Accordingly, Plaintiffs seek to represent a class of similarly-situated persons who received PIP-covered emergency radiological services at one of Defendants' hospitals in Florida and who "(a) were billed by the facility for any portion of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges and, as a result, were billed for additional medical services rendered by the facility and/or third-party providers that would otherwise have been covered under PIP."

Plaintiffs assert violations of Florida's Deceptive and Unfair Trade Practices Act, breach of contract, and breach of the implied covenants of good faith and fair dealing.  Defendants moved to dismiss the amended complaint and to strike Plaintiffs' class allegations.  The court dismissed the claim for breach of the implied covenants of good faith and fair dealing, but let the other claims proceed. The court struck the class allegations, however, explaining that "the most important issue to settle, the reasonableness of the charge for the specific radiological service and the damages incurred by each putative plaintiff, would be highly individualized in nature." *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 87 F. Supp. 3d 1299, 1308 (M.D. Fla. 2015).  The court said it would also have to examine whether the expenses Plaintiffs claimed would have been covered by PIP

5

insurance were reasonable, necessary, and related to the motor vehicle accident. *Id.* at 1309. Thus, the court found that individual factual inquiries would predominate in this action, making class litigation highly impractical. *Id.* The court struck the class allegations and dismissed three of the four named plaintiffs so they could file separate actions. *Id.* at 1310. We granted Plaintiffs' interlocutory appeal of the district court's decision to strike the class allegations. *See* Fed. R. Civ. P. 23(f).[1]

## II.    Discussion

We review a district court's decisions regarding class certification for abuse of discretion. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Id.* (citation omitted).

Federal Rule of Civil Procedure 23 governs class actions. "A class action may be maintained only when it satisfies all the requirements of [Rule] 23(a) and

---

[1] Defendants argue that we lack jurisdiction to hear this appeal because Rule 23(f) only authorizes "an appeal from an order granting or denying class-action certification," not an appeal from an order granting or denying a motion to strike class allegations. We reject Defendants' narrow reading of Rule 23(f) because the district court's order striking Plaintiffs' class allegations "is the functional equivalent of denying a motion to certify the case as a class action." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110 n.2 (4th Cir. 2013) (allowing interlocutory review under Rule 23(f)); *see also In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002) (functional equivalent of denying a motion to certify a class action is appealable under Rule 23(f)).

at least one of the alternative requirements of Rule 23(b)."  *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003) (quotation marks omitted).

Under Rule 23(a), the four prerequisites to bringing a class action are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In this case, the relevant alternative requirement is Rule 23(b)(3), under which a court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "In other words, the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (internal quotation marks omitted).  The district court found that, on its face, Plaintiffs' complaint failed to satisfy Rule 23(b)(3), and because

7

Plaintiffs do not argue that they meet either of the other alternative requirements under Rule 23(b), this prong is the only issue before us on appeal.

Plaintiffs argue that the district court erred in two ways:  (1) the district court should have allowed discovery before making a decision about predominance, and (2) the district court made its decision primarily on the basis that there would be individualized damages issues, which fact should not necessarily preclude class treatment.  We agree that the court erred in finding that, as a matter of law, class treatment was inappropriate based on the face of Plaintiffs' complaint.  And although the district court did not deny class treatment solely due to individualized damages issues, we also agree that at this stage the complaint does not compel a conclusion that individualized inquiries into damages would overwhelm any common issues.

Rule 23(c) directs a district court, "[a]t an early practicable time after a person sues or is sued as a class representative, . . . [to] determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  While it is sometimes possible to decide the propriety of class certification from the face of the complaint, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008), the Supreme Court has emphasized that class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming

8

to rest on the certification question." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted).  In fact, "the determination usually should be predicated on more information than the complaint itself affords.  The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential . . . ." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc) (internal citation and footnote omitted).[2]  After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011) (internal quotation marks omitted).

In *Mills v. Foremost Insurance Co.*, we reversed a district court's decision, based solely on its reading of the complaint, not to certify a class.  511 F.3d at 1307–11.  The plaintiffs alleged that a mobile-home insurer did not fully compensate the homeowners for damages caused by a hurricane.  *Id.* at 1302. Because the plaintiffs suffered a wide variety of property damage in the hurricane, and the insurance policies varied, the district court, without conducting discovery, declined to certify the class.  *Id.* at 1303.  We reversed, explaining that this was not the sort of case where it is obvious from the pleadings that the individual issues

---

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

would overwhelm the common issues. *Id.* at 1309. The plaintiffs claimed that the common issue was whether defendant failed to compensate them for contractor overhead and profit charges, as well as for taxes they incurred in purchasing materials to repair their hurricane-damaged property. *Id.* at 1310. On the other hand, the defendant argued that individual issues would predominate because the court would have to determine for each claim "whether the services of a general contractor would be reasonably required under the circumstances," and "there may be instances in which the insureds, depending on their individual circumstances, might buy materials but incur no sales tax." *Id.*

The plaintiffs responded that they could use defendant's own adjusters' hurricane-damage estimates to determine whether a general contractor's services were reasonably required, or whether sales taxes were reasonably likely to be incurred. *Id.* The plaintiffs did not dispute these estimates and argued that all they sought was a percentage of these cost estimates for overhead, profit, and sales tax, which they said defendant improperly excluded from its actual cash-value payment to each insured. *Id.*

Because of these diverging views on the ease of proving the class's claims, we held "that the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least." *Id.* at 1309–10.

10

Therefore, the district court abused its discretion by finding that class-action treatment was inappropriate based solely on the pleadings. *Id.* at 1311. We explained that the court should permit limited discovery relevant to the certification issue and then determine whether to hold an evidentiary hearing. *Id.*[3]

In this case, the parties similarly present conflicting interpretations of the issues and evidence that would be required to establish liability and damages for the class as a whole. Defendants argue that individual issues predominate because liability cannot be proven on a class-wide basis. To determine liability, they claim that the court would have to look at the reasonableness of the charges for each class member's radiological services. But they argue that the reasonableness inquiry is complicated by the fact that different hospitals charge different rates for the same services. According to the PIP statute, the court would have to consider several factors to assess reasonableness, namely the "usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules

---

[3] Defendants' attempt to distinguish *Mills* is unpersuasive. Defendants argue that there were fewer individualized issues in *Mills* because the plaintiffs accepted defendant's hurricane-damage estimates and wanted to calculate the percentage wrongfully withheld based on those figures. 511 F.3d at 1310. But in *Mills*, we did not find that the plaintiffs' concession obviated any predominance problems. We explained only that, due to the "vastly differing claims of the parties about the relative ease and practicability of calculating overhead, profit, and sales tax from [the defendant's] estimates and resolving liability," the district court should have permitted discovery before making a certification decision. *Id.* at 1310–11. As in *Mills*, the parties here disagree over the relative ease of proving the class's claims, and we conclude that the district court prematurely denied certification without the benefit of any discovery.

applicable to motor vehicle and other insurance coverages." Fla. Stat.

§ 627.736(5)(a).

Plaintiffs acknowledge that there are some factual differences regarding each class member's claim, such as the specific radiological service received, the hospital where the plaintiff was treated, and the total amount billed for these services. But Plaintiffs argue that their theory of liability is that Defendants, across the board, charged unreasonable rates for emergency radiological services to PIP patients. And they did so because Defendant HCA, the parent company of the defendant hospitals, directed the hospitals to charge rates that greatly exceeded any standard of reasonableness under the PIP statute. While the rates varied from hospital to hospital, Plaintiffs argue that the fees were many times greater than the Florida Medicare rates for the same services, thus easing problems with determining reasonableness.[4] For example, Defendants charged between $5,900 and $6,965 for spinal CT scans. Because Medicare rates for this service are between $213 and $220, and Defendants charged uninsured patients up to $3,454 for CT scans, the numerous factors Defendants cite as requiring individual analyses may not be dispositive after all. Discovery could reveal that it is relatively easy to determine that these rates are unreasonable across the board

---

[4] We note that this appeal does not require us to reach the question whether a large differential between the extremely low rates of payment reimbursable by Medicare and the rates charged to non-Medicare patients necessarily suggests that the latter are unreasonable.

12

without having to resort to analyzing subtle differences between hospitals.  And presumably each hospital consistently charges the same rate for a specific service. For example, Herrera and Sanchez each paid $6,404 for a brain CT scan and $2,222 for a thoracic spine x-ray at JFK Medical Center.  Just as in *Mills*, it was premature to find that liability issues would not be common to the class.

Plaintiffs also argue that, to the extent there are individualized damages issues, common issues nevertheless predominate.  Defendants respond that the district court would have to analyze whether a class member's PIP insurance was exhausted, whether that member had co-insurance that would have covered additional expenses, and whether those charges were reasonable and related to the motor vehicle accident.

"[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc.*, 333 F.3d at 1261.[5]  Typically, even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a class-wide basis. *See id.*; *cf. Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004) ("It is primarily when there are significant individualized questions going to liability

---

[5] Contrary to Plaintiffs' argument, the district court did not rest its decision solely on a finding that individualized damages issues would overwhelm common issues.  As discussed above, the court also considered liability by finding that the court would have to determine the reasonableness of the rates Defendants charged for different radiological services. *See Herrera*, 87 F. Supp. 3d at 1308–09.

that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification."), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

We recognize that damages calculations will vary from person to person. But at least at the pleading stage, we cannot say that this is an "extreme case[] in which computation of each individual's damages will be so complex, fact-specific, and difficult that the burden on the court would be simply intolerable." *Klay*, 382 F.3d at 1260. In short, we find that this case is analogous to *Mills v. Foremost Insurance Co.* because discovery is needed to determine whether common issues predominate over any individualized questions.

We emphasize that nothing in our opinion should be read to suggest how the district court should ultimately rule on the certification decision. We hold only that the district court should have allowed limited discovery instead of striking the class allegations based solely on the face of the complaint.[6]

---

[6] Defendants urge us to affirm for the additional reason (not considered by the district court) that class membership is unascertainable. Defendants reason that the proposed class includes members who suffered no injury, and the court would have to evaluate each individual's PIP coverage to see if their coverage was prematurely exhausted. Although we may affirm a judgment on any legal ground supported by the record, regardless of whether the district court relied on that ground, *see Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015), Defendants failed to raise this issue below and therefore the issue is waived, *see Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). In any case, we are unpersuaded from the face of the complaint that class membership is unascertainable.

Defendants also argue in a footnote that Plaintiffs lack Article III standing to represent class members who were treated at hospitals other than the ones where the named plaintiffs were

14

### III.    Conclusion

For all the above reasons, we reverse the district court's decision to strike the class allegations from Plaintiffs' amended complaint and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

treated.  Plaintiffs allege that Defendant HCA controlled all its subsidiary hospitals' unreasonable pricing policies, and thus Plaintiffs purport to represent any PIP-covered patient who received radiological services at any HCA-owned facility in Florida.  Because the district court struck Plaintiffs' class allegations, it declined to reach the standing issue.  In *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1277–78 (11th Cir. 2000), we declined to review objections to standing in a Rule 23(f) interlocutory appeal because the factual record was not fully developed and the district court was better situated to address standing concerns as the litigation progressed.  Here, because on remand the district court will be able to make its certification decision after some discovery, it will be in the best position to rule on Defendants' standing objections.