Dr. Steven ARKIN, a Florida resident, individually and as the representative of a class of similarly-situated persons, Plaintiff,

v.

INNOCUTIS HOLDINGS, LLC, Cipher Pharmaceuticals US LLC, Delaware limited liability companies, and John Does 1-10, Defendants.

Case No: 8:16-cv-0321-T-27TBM

United States District Court,
M.D. Florida.

Signed May 25, 2016

Filed May 26, 2016

Ryan M. Kelly, Ross M. Good, Anderson & Wanca, Rolling Meadows, IL, for Plaintiff.

Brian Michael Ercole, Robert M. Brochin, David C. Behar, Morgan, Lewis & Bockius, LLP, Miami, FL, for Defendants.

## ORDER

JAMES D. WHITTEMORE, United States District Judge

**BEFORE THE COURT** is Defendants' Innocutis Holdings, LLC ("Innocutis") and Cipher Pharmaceuticals US LLC ("Cipher") (collectively "Innocutis Defendants") Motion to Dismiss and Memorandum of Law (Dkt. 24), which the Plaintiff opposed (Dkt. 25). Upon consideration, the Motion to Dismiss (Dkt. 24) is **GRANTED in part** and **DENIED in part.**

**Background**

Plaintiff alleges Innocutis Defendants violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA") by sending unsolicited facsimile advertisements ("junk fax(es)") to Plaintiff and more than 25 other recipients either without the required opt-out language or with the required opt-out language but without permission. (Dkt. 1 ¶¶ 12, 14-15, 17, 30). Attached to the Complaint as Exhibit A is the alleged junk fax ("the Fax") received by Plaintiff on September 16, 2015. (Dkt. 1–1). The Fax describes the prescription drug Sitavig® distributed by Innocutis. (*Id.*). Plaintiff seeks certification of this suit as a class action, actual damages or statutorily prescribed damages, and injunctive relief. (Dkt. 1 at 13).

Innocutis Defendants move to dismiss the Complaint arguing that they are not "senders" of the Fax under the TCPA, that all Defendants are improperly grouped, that the Fax is not an advertisement, and that Plaintiff lacks standing. (Dkt. 24 at 1-2). Additionally, they move to either dismiss or strike the class allegations as an improper fail-safe class. (*Id.* at 2–3). Plaintiff contends Innocutis Defendants are "senders" of the Fax as pled, the Defendants are not improperly grouped, the Fax is an advertisement as a matter of

law, and that Plaintiff as the Fax recipient has standing. (Dkt. 25 at 3). Further, Plaintiff argues dismissing or striking the class allegations at the pleading stage is premature. (*Id.* at 14-18).

**Standard**

A complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but a plaintiff's complaint must contain more than unadorned or conclusory accusations of harm. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1324 (11th Cir.2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

All factual allegations in a complaint must be accepted as true for the purposes of a motion to dismiss but this is "inapplicable to legal conclusions." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. 1937, 1949. The allegations are construed in the "the light most favorable to the plaintiff." *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP,* 634 F.3d 1352, 1359 (11th Cir.2011).

A motion to dismiss for lack of standing is effectively a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) which is done either by facial or factual attack. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (citations omitted). A facial attack requires examination of the pleadings, while a factual attack permits inquiry into extrinsic material such as affidavits or testimony. *Id.* at 1232–33. Where, as here, the attack is facial, the standard is essentially the same as applied to a Rule 12(b)(6) motion to dismiss. *Id.*

**Discussion**

**Whether the Fax is an Advertisement**

■ Innocutis Defendants move to dismiss the Complaint arguing that as a matter of law, the Fax is not an advertisement but an "informational communication" because it does not promote the sale of Sitavig® but rather describes the drug's safety features. (Dkt. 24 at 8-10). Plaintiff argues the Fax advertises Sitavig® by introducing it to the market, offering rebates to incentivize purchases, describing the co-payment for individuals with insurance, and touting the drug's quality. (Dkt. 25 at 7-10).

■ ▪The TCPA imposes civil liability on senders of fax advertisements without permission. 47 U.S.C. § 227(b). Advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1) (2013). "[M]essages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TCPA. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2006 Final Rule"); Junk Fax Prevention Act of 2005, 71 FR 25967-01, 25972 (2006) (final rule). Therefore, if the Fax is not an advertisement, Plaintiff has no claim under the TCPA. 47 U.S.C. 227(b); 47 C.F.R. 64.1200(f)(1); *2006 Final Rule* 71 F.R. at 25972.

Innocutis Defendants contend that because the Fax does not have a price or ordering information, but rather expresses drug safety information, it is not an adver-

tisement, but rather an "informational communication." (Dkt. 24 at 9). However, even goods promoted at no cost are unsolicited advertisements. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005* ("2006 Junk Fax Order",), 21 F.C.C. Rcd. 3787, 3814 (2006) (report and order and third order on reconsideration).[1] Further, there is a distinction between advertising faxes and informational faxes. *Id.* Examples of informational faxes include "industry news articles, legislative updates, or employee benefit information." *Id.* In determining whether a fax is a *"bonafide* 'informational communication' " the FCC considers if it is issued periodically, if the text varies from issue to issue, and if it is targeted to regular, specific recipients. *Id.* at n.187. For example, a newsletter will not constitute an advertisement so long as the primary purpose is informational rather than promotional. *Id.* at 3814.

In the pharmaceutical drug context, the Eleventh Circuit noted

> [C]ommunications intended to induce the doctors to prescribe a pharmaceutical manufacturer's drugs for the doctors' patients would constitute 'advertising' even though the communications were never observed by the ultimate consumers, the patients ... [just as] a cereal manufacturer's Saturday morning commercials are 'advertising' even though they are aimed at children, not their parents who actually buy the product ....

*Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau,* 144 F.3d 1372, 1378 n. 11 (11th Cir.1998)(examining advertising activities of prescription drug manufacturer in insurance coverage dispute) (alterations in original) (quoting Jan T. Chilton, *Expanding Boundaries of the Advertising Injury Coverage,* 620 PLI/Comm 165, 175 (1992) (citations omitted)). Thus, a fax about a prescription drug that encourages a doctor to prescribe it can constitute an advertisement, notwithstanding that the price is not listed and the doctor is not encouraged to buy the drug. *See Elan Pharmaceutical,* 144 F.3d at 1378 n. 11; *2006 Junk Fax Order,* 21 F.C.C. Rcd. at 3814.

Plaintiff alleges the Fax is "an unsolicited advertisement" and "describes the commercial availability or quality of Defendants' products." (Dkt. 1 ¶ 2). A third of the Fax is dedicated to describing Sitavig® as "A BREAKTHROUGH SPOT TREATMENT FOR COLD SORE OUTBREAKS ... a new single-dose treatment that hits the target—every time" and calls the reader to "FIGHT COLD SORES BEFORE THEY START." (Dkt. 1–1) (emphasis in original). The Fax directs the reader to·a website, email address, and telephone number for "rebates and resources." (*Id.*). The Fax purports to provide a "PATIENT ACCESS CARD" for a 2 for 1 deal for eligible patients. (*Id.*) (emphasis in original). It also includes ingredient information, a brief summary of side effects, and indications and uses.[2] (*Id.*).

---

1. "District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation, because '[d]eeming agency action invalid or ineffective is precisely the sort of review the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders.' " *Murphy' v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302, 1307 (11th Cir.2015) (quoting *Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110,

1120–21 (11th Cir.2014)). "If the Hobbs Act applies, a district court must afford FCC final orders deference and may only consider whether the alleged action violates FCC rules or regulations." *Id.*

2. This is the type of information required in prescription-drug advertisements. 21 C.F.R. § 202.1.

Considering the Fax, standing alone, its primary purpose is to promote the quality and availability of the prescription drug Sitavig® distributed by Innocutis, and therefore constitutes an advertisement for purposes of Defendants' motion. *See 2006 Final Rule*, 71 FR at 25972; *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 225 (6th Cir.2015) (affirming grant of summary judgment in junk fax case for pharmacy benefit manager on a developed record where the manager did not sell the drugs described in the fax); *St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.*, No. 4:12–CV–02224, 2013 WL 1076540, (E.D.Mo. March 13, 2013) (denying motion to dismiss where fax sent by a pharmaceutical manufacturer, linked to the manufacturer's drug, and addressed to a physician, was not an advertisement as a matter of law). Defendants' argument that the Fax is purely informational requires examination of factors such as its frequency, text changes from fax to fax, and whether or not the recipients are subscribers, i.e. information outside the four-corners of the Fax. *See Sandusky*, 788 F.3d at 222; *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*, No. 12–11693–GAO, 2013 WL 5299134 at *2 (D.Mass. Sept. 18, 2013) (granting motion to dismiss where face of the fax indicated recipient had existing subscription); *2006 Junk Fax Order*, 21 F.C.C. Rcd. at 3814 n. 187.

### Whether the Innocutis Defendants are Senders of Faxes

▮ Innocutis Defendants contend Plaintiff fails to allege they "sent" the Fax within the meaning of the TCPA. Essentially, they argue that because Plaintiff failed to allege that each Defendant either physically sent the Fax or the Fax was sent on each Defendant's behalf *and* the

Fax advertised each Defendant's goods or services, Plaintiff fails to state a claim. (Dkt. 24 at 6-7). Plaintiff counters that the allegations satisfy FCC regulations defining "sender." (Dkt. 25 at 3-6).

The TCPA imposes civil liability on any person who "uses any telephone facsimile machine, computer, or other device to send" junk faxes. 47 U.S.C. § 227(b)(1)(c) (2006); *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted). In 2006, the FCC amended the regulations to define the term "sender" as a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."[3] 47 C.F.R. § 64,1200 (f)(10).

The FCC describes a "sender" as "the person on whose behalf the advertisement is sent," *2006 Junk Fax Order*, 21 F.C.C. Rcd. at 3805 n. 122, "the business on whose behalf the fax is transmitted," *id.* at 3805, and recognizes "[i]n most instances, this will be the entity whose product or service is advertised or promoted in the message." *Id.* at 3808. It follows then, that "sender" includes a person or entity on whose behalf the fax is sent. *See* 47 C.F.R. § 64.1200 (f)(10); *2006 Junk Fax Order*, 21 F.C.C. Rcd. at 3808.

In 2008, the FCC provided further clarification of the definition of "sender" stating "the Commission has defined the 'sender' as the person or entity whose services are advertised or promoted in the advertisement." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005* ("2008 Junk Fax Order"), 23 F.C.C. Rcd. 15059, 15065 n. 49 (2008) (order on reconsideration) (citing *See 2006 Junk Fax Order*, 21 FCC Rcd at 3807–08.

---

**3.** While the regulations have undergone multiple amendments, the definition of sender has remained the same since August 1, 2006.

*Compare 2006 Final Rule*, 71 FR at 25979 (eff. Aug. 1, 2006), *with* 47 C.F.R. § 64.1200 (f)(10) (eff. Oct. 16, 2013)

*See also* 47 C.F.R. § 64.1200(f)(8)). The *2008 Junk Fax Order* further recognized that the " 'sender' will not always be the same party that actually transmits the facsimile to the recipient." *Id.* at 15069 n. 60. Again, it follows, that "sender" includes the person or entity whose product or service is advertised. *See* 47 C.F.R. § 64.1200 (f)(10); *2008 Junk Fax Order*, 23 F.C.C. Rcd. at 15065 n. 49.

The FCC Orders interpreting "sender" are consistent with the plain reading of the definition as a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200 (f)(10) (emphasis added). *See also Murphy*, 797 F.3d at 1307; *2008 Junk Fax Order*, 23 F.C.C. Rcd. at 15065 n. 49, 15066 n. 60; *2006 Junk Fax Order*, 21 F.C.C. Rcd. at 3805 n. 122, 3808.

Innocutis Defendants rely on *Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S.* ("Palm Beach II") in support of their contention that they should not be considered a "sender" solely because their goods or services are advertised in the Fax.[4] 781 F.3d 1245, 1254 (11th Cir.2015); (Dkt. 24 at 6). In *Palm Beach II*, the fax was sent on December 13, 2005, eight months *prior* to the FCC defining "sender." 781 F.3d at 1248. The Eleventh Circuit recognized with respect to pre-2006 fax advertisements that the TCPA was silent on the term "sender," considered the 1995 Junk Fax Order, and conducted a

*Chevron* analysis in deferring to the FCC's interpretation of the TCPA *at the time*, which did not include the "sender" definition and subsequent FCC Orders interpreting sender. *Id.* at 1254–56. *See also* 47 C.F.R. § 64.1200 (f)(10) (eff. Aug. 1, 2006); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, ("1995 Junk Fax Order")10 F.C.C. Rcd. 12391, 12407 (1995) (memorandum opinion and order) ("[w]e clarify that the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance . . . . ").

It follows, therefore, that the holding in *Palm Beach II* "that a person whose services are advertised in an unsolicited fax transmission, *and* on whose behalf the fax is transmitted, may be held liable" does not limit who may be a "sender" under the current regulations. 781 F.3d at 1254. (emphasis added).

*See also, Siding and Insulation Co. v. Alco Vending, Inc.*, No. 15–3551, 822 F.3d 886, 893–95, 2016 WL 2620507, at *7–8 (6th Cir. May 9, 2016) (holding the "on-whose behalf" standard described in *Palm Beach II* applied to faxes sent between the effective date of the 1995 FCC Order and the August 1, 2006 effective date of the new definition of sender).

When the FCC defined "sender," liability was expanded to include the "on-whose behalf" standard *and* a strict liability standard for entities whose good or services were advertised.[5] *Siding and Insulation*

---

**4.** Innocutis Defendants also rely on *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935 (7th Cir.2016) (interpreting faxes sent in June 2006), *Bais Yaakov v. Varitronics, LLC*, No. CIV. 14–5008 ADM/FLN, 2015 WL 1529279, at *4 (D.Minn. Apr. 3, 2015) (relying on *Palm Beach II*), and *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13–cv–01592–AEP, 2014 WL 7224943, at *6 (M.D.Fla. Dec. 17, 2014) (interpreting faxes sent in 2009 and relying on *Palm Beach Golf Center–Boca, Inc. v. Sarris* ("Palm Beach I"), 771 F.3d 1274

(11th Cir.2014) (opinion vacated and superseded on reconsideration sub nom. *Palm Beach Golf Ctr. Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir.2015))).

**5.** The Sixth Circuit explained "[T]here exist situations in which (1) the 'entity on whose behalf the advertisement is sent' and (2) the 'entity whose product or service is advertised' are not one and the same. These terms, in other words, are not synonymous. Hence, . . . the FCC expanded the scope of liability

*Co.*, 2016 WL 2620507, at *7. Thus, Innocutis Defendants' reliance on *Palm Beach II* is misplaced as to whether or not the Plaintiff properly alleged the Innocutis Defendants sent the Fax in 2015.

Plaintiff alleges Defendants sent the Fax to Plaintiff without permission.[6] (Dkt. 1 at 1, ¶¶ 12, 14). Plaintiff further alleges that Defendants receive revenues, profit, and benefit from products, goods, or services advertised in the fax. (*Id.* ¶ 13). Specifically, Plaintiff alleges "Defendants sent the [sic] on or about September 16, 2015, advertisement via facsimile transmission ... to the telephone lines and facsimile machines of Plaintiff .... " (*Id.* ¶ 30). The Fax itself makes multiple references to Innocutis. (Dkt. 1–1). Innocutis holds the patent and distributes the drug. (*Id.*). Innocutis provides customer service and is the contact for reporting suspected adverse reactions. (*Id.*). Therefore, Innocutis is a "sender" under the TCPA as Innocutis' goods are advertised or promoted in the Fax. 47 C.F.R. § 64.1200 (f)(10); *Siding and Insulation Co.*, 2016 WL 2620507, at *7; *2008 Junk Fax Order*, 23 F.C.C. Rcd. at 15065 n. 49, 15066 n. 60; *2006 Junk*

*Fax Order*, 21 F.C.C. Rcd. at 3805 n. 122, 3808.

However, the Fax does not reference Cipher. (Dkt. 1–1). While the Complaint alleges Cipher acquired Innocutis in 2015, Plaintiff fails to allege how Sitavig® is Cipher's product. (Dkt. 1 ¶ 10). Allegations that Cipher receives revenues from the sale of Sitavig®, without more, do not suggest it is Cipher's product (when the Fax suggests otherwise). (*Id.* ¶ 13). Plaintiff's conclusory allegations as to Cipher are insufficient under the "on-whose-behalf" inquiry.[7] (*Id.* ¶¶ 12-15, 30).

Accordingly, Plaintiff fails to state a plausible claim that Cipher is a sender under the TCPA. 47 C.F.R. § 64.1200(f)(1). *See Siding and Insulation Co.*, 2016 WL 2620507, at *7-12; *Cin–Q Auto.*, 2014 WL 7224943, at *7. Defendants' claims of improper grouping of all Defendants is therefore denied as moot, since the claim against Cipher is due to be dismissed.[8]

### Standing under the TCPA

██ Innocutis Defendants make a facial attack on Plaintiff's statutory standing because he does not allege he owned the fax machine, subscribed to the fax telephone

---

under the TCPA..... [L]iability ... would extend to both those entities 'on whose behalf the advertisement [was] sent' *and* those entities 'whose goods or services [were] advertised or promoted in the unsolicited advertisement .... ' '" *Id.* at *7 (emphasis in original) (citations omitted). The court further held the definition did not apply retroactively. *Id.* Arguably, additional standards of liability may apply, but are not at issue at this time. *Id.* at *9-11 (discussing vicarious-liability standard).

6. According to the Complaint, "Defendants" includes Cipher, Innocutis, and John Does 1-10 to be identified in discovery. (Dkt. 1, ¶ 10).

7. The "on-whose-behalf" inquiry includes, but is not limited to, considering
the degree of input and control over the content of the fax(es), the actual content of the fax(es), contractual or expressly state

limitations and scope of control between the parties, privity of the parties involved, approval of the final draft of the fax(es) and its transmissions(s), method and structure of payment, overall awareness of the circumstances (including access to and control over facsimile limits and transmission information), and the existence of measures taken to ensure compliance and/or to cure non-compliance with the TCPA.

*Siding and Insulation Co.*, 2016 WL 2620507, at *12 (quoting *Cin–Q Auto.*, 2014 WL 7224943, at *7).

8. Because Cipher is dismissed, Innocutis Defendants' argument that all Defendants are improperly grouped is effectively moot. However, Plaintiff will need to amend to identify the remaining John Doe Defendants, if any, and sufficiently allege their liability under the TCPA.

line, or that the Fax was directed to him. (Dkt. 24 at 11-12). Plaintiff counters that the allegations including language that Defendants sent advertisements "to the telephone lines and facsimile machines of Plaintiff," among others, are sufficient to allege statutory standing. (Dkt. 25 at 11-12).

"Congress created a private right of action for enforcement of violations of the statute in section 227(b)(3) and provided statutory damages for a "junk" fax recipient." *Palm Beach II*, 781 F.3d at 1252 (citing TCPA 47 U.S.C. § 227(b)(3) (2006)). It is "intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data." *Id.* The court, in its analysis of Article III standing, acknowledged that the injury targeted was "the sending of the fax and resulting occupation of the *recipient's* telephone line and fax machine." *Id.* at 1250 (emphasis added). The court did not address either who the fax was directed to or the costs of printing the fax, focusing instead on the occupation of the phone line and fax machine. *Id.* at 1252.

Innocutis Defendants argue that courts only recognize fax machine owners, fax line subscribers, and fax recipients as having statutory standing to under the TCPA.[9] (Dkt. 24 at 10). Plaintiff alleges that Defendants transmitted, faxed, and sent the Fax to his phone line and fax machine, and Defendants used his phone line and fax machine. (Dkt. 1 ¶¶ 12, 15, 30, 35). Assuming the only persons entitled to recover statutory damages are owners, subscribers, and recipients, as Innocutis Defendants argue, it is plausible to infer Plaintiff either owned the fax, subscribed to the fax line, or was the recipient. *See Palm Beach II*, 781 F.3d at 1250–1252. Accordingly, considering the allegations as true and in the light most favorable to Plaintiff, Innocutis Defendants motion to dismiss for lacking of standing will be denied.

### Plaintiff's Class Allegations

Lastly, Innocutis Defendants move to strike or dismiss Plaintiff's proposed class definition as an improper "fail-safe" class. (Dkt. 24 at 12-15). Plaintiff contends Innocutis Defendants motion is premature as the case was recently filed and is in the early stages of discovery. (Dkt. 25 at 14-18).

A court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(b)(f). However, striking class allegations at the pleading stage is the functional equivalent of denying class certification. *See* Fed. R. Civ. P. 23; *Herrera v. JFK Med. Ctr. Ltd. P'ship*, No. 15–13253, 648 Fed.Appx. 930, 931, 2016 WL 1637826, at *1 (11th Cir. Apr. 26, 2016) (reversing district court's striking of class allegations without limited discovery).[10] It follows then, that dismissing class allegations is also the functional

---

9. Additionally, Defendants seemingly argue a different corporate entity subscribes to the fax line and refer to filings with the Florida Department of State Division of Corporations listing Plaintiff as a shareholder. (Dkt. 24 at 10). However, review of these filings does not reveal that the corporate entity subscribes to the fax line at issue in this case. *Compare* ), *with* http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR*2001*1221*30725963.tif&documentNum-

ber=P00000059559 (last accessed May 24, 2016).

10. *See also Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110 n. 2 (4th Cir.2013) (allowing Rule 23(f) interlocutory review of order granting dismissal or striking of class allegations because it "is the functional equivalent of denying a motion to certify the case as a class action"); *In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir.2002) (functional equivalent of denying a motion to certify a class in appealable under Rule 23(f)).

equivalent of denying class certification. *See* Fed. R. Civ. P. 12(b)(6), 23; *Herrera*, 2016 WL 1637826, at *1.

While in some instances, the propriety of class certification is apparent on the pleadings, Eleventh Circuit "precedent... counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir.2008) (citation omitted).

Innocutis Defendants argue Plaintiff's allegations as pled are a fail-safe class, that is, a class that "includes *only* those who are *entitled* to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir.2012) (emphasis in original). However, to delve into the propriety of class certification at this stage is premature.[11] *See Herrera*, 2016 WL 1637826 at *1; *Mills*, 511 F.3d at 1309. The motion to strike and/or dismiss Plaintiff's class allegations is denied.

### Conclusion

Accordingly, Innocutis Defendants' Motion to Dismiss (Dkt. 24) is **GRANTED in part,** and **DENIED in part,** consistent with the discussion above. The claim against Cipher Pharmaceuticals US LLC is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint as to Cipher Pharmaceuticals US LLC within **fourteen (14) days** of the date of this Order or file a notice of his election not to amend. Within **fourteen (14) days** of the filing of Plaintiff's amended complaint or notice, Innocutis Holdings, LLC and/or Cipher Pharmaceuticals US LLC shall respond.

**DONE AND ORDERED** this 25<u>th</u> day of May, 2016.

---

11. Further, the parties agreed in their case management report (Dkt. 29) on a discovery and briefing schedule for the purposes of class certification.