[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10894

_____

D.C. Docket No. 1:17-cv-24500-RNS

JACOB ZOWIE THOMAS RENSEL,
individually and on behalf of all others similarly situated,
WANG YUN HE,
CHI HAO POON,
KING FUNG POON,
JAE J. LEE,
MATEUSZ GANCZREK,
RODNEY WARREN,

                                                      Plaintiffs - Appellants,

versus

CENTRA TECH, INC.,

                                                      Defendant - Appellee,

SOHRAB SHARMA, et al.,

                                                      Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 29, 2021)

Before LAGOA, ANDERSON, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

The plaintiffs in this putative securities fraud class action filed a motion for class certification as early as they realistically could have, but the district court denied it as untimely.  The plaintiffs did not miss any rule-based or court-ordered deadline for their class certification motion.  Nor did their timing cause prejudice to any party.  The case calendar effectively deprived them of any opportunity to conduct discovery in support of class certification.  Under the circumstances of this case, including the near omnipresence of an automatic discovery stay imposed by the Private Securities Litigation Reform Act whenever a motion to dismiss is pending -- in effect for just under fifteen of the eighteen months between the initial complaint and the plaintiffs' certification motion -- the district court's timeliness holding was an abuse of discretion.

The district court also erred when it denied certification on the alternative ground that the plaintiffs had not established an administratively feasible method for identifying class members.  Rule 23 implicitly requires that a proposed class be

2

ascertainable; that is, the class must be "adequately defined such that its membership is capable of determination." Cherry v. Dometic Corp., 986 F.3d 1296, 1304 (11th Cir. 2021). But our recent decision in Cherry clarified that to meet this ascertainability requirement, the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner. Of course, considerations of administrative feasibility may still be relevant to Rule 23(b)(3)(D) manageability analysis. Id.

We therefore vacate the district court's order denying the plaintiffs' motion for class certification and remand for further proceedings.

I.

The real action in this appeal is found in its procedural history, but a bit of substantive background is in order. Riding the recent wave of enthusiasm for cryptocurrencies, Centra Tech, Inc. got off to a fast start. Centra Tech promised to market the Centra Wallet, a digital wallet for storing different kinds of cryptocurrencies, and the Centra Card, a Visa and Mastercard-backed debit card that would allow users to make everyday purchases with cryptocurrencies. To raise funds to develop these products, Centra Tech held an initial coin offering ("ICO") between July 2017 and April 2018. The ICO involved the sale of Centra Tokens, which entitled the holder to certain rights related to Centra Tech -- in other words, Centra Tokens were securities similar to the stock sold at an initial public

3

offering.  Centra Tech enlisted the promotional services of longtime world championship boxer Floyd Mayweather Jr. and double-platinum-selling hip-hop producer DJ Khaled to publicize the ICO to potential investors.  Apparently impressed, thousands of investors participated in the ICO to enable Centra Tech to raise $32 million.

But Centra Tech's fortunes -- and those of its investors -- soon crashed. Centra Tech, it turned out, had not been truthful with the ICO purchasers.  For one thing, Visa and Mastercard had not actually signed on to support the Centra Card. Nor were Centra Tech's digital currency holdings insured, despite assurances otherwise.  Centra Tech also tried to boost its investor appeal by listing fake executives.  Centra Tech personnel even fabricated a LinkedIn profile for the fictional "Michael Edwards," who was supposedly a Harvard professor and Centra Tech co-founder.  Centra Tech's real-life founders, Sohrab Sharma, Raymond Trapani, and Robert Farkas pled guilty to criminal securities and wire fraud charges in the Southern District of New York; the SEC also sued them for securities fraud.  See United States v. Sharma et al., No. 18-cr-340-LGS, ECF Nos. 152, 427, 470 (S.D.N.Y.); S.E.C. v. Sharma et al., No. 18-cv-2909-DLC, ECF (S.D.N.Y.).  The SEC action remains stayed pending final resolution of the criminal case (Trapani, who cooperated with the government, has not yet been sentenced).

4

ICO investor Jacob Rensel filed the instant suit against Centra Tech and some of its principals in the Southern District of Florida on December 13, 2017. He alleged the sale of unregistered securities in violation of Sections 12(a)(1) and 15(a) of the Securities Act of 1933 (15 U.S.C. §§ 77l(a)(1), 77o(a)).  The defendants moved to dismiss on February 2, 2018, triggering an automatic stay on "all discovery and other proceedings" under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.").

Rensel (together with Wang Yun He, who had been named co-lead plaintiff) moved for leave to file an amended complaint on May 29, 2018.  On September 25, 2018, the district court granted this motion and simultaneously denied the still-pending motion to dismiss as moot.  Thus, the PSLRA automatic discovery stay lifted on September 25.  But this pause was short lived.  Rensel, together with He, Chi Hao Poon, King Fung Poon, Jae Lee, Mateusz Ganczarek, and Rodney Warren (the "Plaintiffs") filed an amended class action complaint on October 9, 2018. They repeated the unregistered securities claims from the first complaint and added allegations of material misrepresentations in violation of Sections 10(b) and 20(a)

5

of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) against Centra Tech; its founders Sharma, Trapani, and Farkas; its executives Steven Stanley, Steven Sykes, Allan Shutt, and Chase Zimmerman; and ICO promoters Mayweather and Khaled. Sykes, Mayweather, and Khaled moved to dismiss the amended complaint on December 21, 2018. The PSLRA stay therefore kicked in once again on that day. Other defendants filed motions to dismiss later: Stanley on January 16, 2019 and Shutt on April 26.

Earlier, on November 19, 2018, the district court had ordered the parties to advise whether they preferred a standard or expedited case schedule (with outlines of each attached to the order), or whether they had good reasons to request a more protracted schedule. The parties timely responded with a Joint Discovery Plan and Status Report. The defendants requested an extended schedule, in part because of the need for discovery related to class certification. Thus, the defendants proposed a schedule premised on the PSLRA stay expiring by March 20, 2019; this schedule suggested that the court impose a June 14, 2019 deadline for the Plaintiffs to file a motion for class certification. The Plaintiffs, in turn, opined that the court's standard schedule would suffice "if cued from the time of the adjudication of all pending motions to dismiss and the filing of Answers by defendants," but observed that the court needed to add a deadline for their class certification motion. Notably, the Plaintiffs also informed the district court that it would be

6

"inappropriate and unfair" to commence the discovery schedule until after the PSLRA stay had been lifted. The district court did not follow up with a scheduling order adopting its own or any party's proposed schedule; thus, the court never imposed a deadline for the Plaintiffs' class certification motion.

At the Plaintiffs' request, the Clerk entered default against Centra Tech on January 31, 2019 for failure to appear. The district court granted Sykes's, Mayweather's, Khaled's, and Stanley's motions to dismiss in a May 1, 2019 omnibus order. But Shutt's motion to dismiss remained, and so, therefore, did the PSLRA stay.

The Plaintiffs voluntarily dismissed their claims against Sharma, Trapani, Farkas, and Zimmerman on June 5, 2019, leaving Centra Tech and Shutt as the sole remaining defendants. On June 7, the district court ordered the Plaintiffs to advise the court whether they intended to pursue their claims against Shutt and to file a motion for default judgment against Centra Tech by June 20. The Plaintiffs voluntarily dismissed their claims against Shutt on June 7, and the district court denied Shutt's motion to dismiss as moot (also on June 7). At long last, no motions to dismiss remained pending, and the PSLRA discovery stay lifted once and for all.

As ordered, the Plaintiffs moved for default judgment against Centra Tech on June 13, 2019. That same day, the Plaintiffs moved to certify three subclasses

of Centra Tech investors: those who had purchased Centra Tokens from Centra Tech during the ICO between July 23 and October 5, 2017; those who had done so between October 6, 2017 and April 20, 2018; and those who had purchased Centra Tokens on the open market. Centra Tech opposed the motion, claiming, among other things, that the named plaintiffs lacked standing and could not meet Federal Rule of Civil Procedure 23's requirements for certification because they could not adequately represent the class and did not possess claims typical of the class members. It also argued that the Plaintiffs had waived their rights to bring a class action by signing agreements governing the sale of their Centra Tokens. Centra Tech, however, did not even suggest that the Plaintiffs' motion for class certification should be denied because it was filed in an untimely manner.

On September 16, 2019, the district court denied the motion to certify the three subclasses, offering two alternative grounds for its decision. First, the district court relied on Rule 23(c)(1)(A)'s requirement that a class be certified "at an early practicable time" to hold that the Plaintiffs' certification motion -- filed eighteen months after the initial complaint and six months after the amended complaint -- was untimely. The district court noted the absence of any excuse for the delay and concluded that the Plaintiffs had purposefully delayed until the certification motion "would be unopposed by a defaulting defendant."

8

Second, the court determined that the proposed subclasses failed to meet Rule 23's implicit ascertainability requirement because the Plaintiffs had not proposed an administratively feasible method of identifying absent class members. Plaintiffs' reference to the existence of a Centra Tech spreadsheet listing ICO investor information did not suffice, the district court reasoned, because the spreadsheet covered only a subset of the members of the first proposed subclass. Moreover, the Plaintiffs did not actually have this spreadsheet; they relied on filings in the criminal and SEC actions describing it. The court added that the Plaintiffs' reference to transaction information recorded by cryptocurrency exchanges was insufficient because the Plaintiffs had not explained to the court how such an identification process might work.

The Plaintiffs tried again on October 1, 2019 with a renewed motion for class certification. This time, they devoted substantial argument to both timeliness and ascertainability. They explained that they had been waiting to move to certify the class until the lifting of the PSLRA automatic discovery stay allowed them to conduct certification-related discovery. Regarding ascertainability, they proposed a new, narrowed class definition (all persons other than certain Centra Tech insiders who had purchased Centra Tokens as part of the ICO between July 23 and October 5, 2017), and provided an affidavit from an experienced claims administrator detailing a claims forms process for identifying class members. The

district court denied the renewed motion because, in its view, the Plaintiffs had not adduced "new evidence, changed circumstances, or new information about the class members' claims" sufficient to justify a renewed motion.

Meanwhile, the parties had been litigating the Plaintiffs' court-ordered motion for default judgment against Centra Tech, which the district court granted on December 13, 2019.  The judgment ordered Centra Tech to pay damages to the named plaintiffs based on their Centra Token holdings, which ranged from $350.10 in Rensel's case to $2,672,864.54 for He.  The district court denied Centra Tech's motion for reconsideration on February 3, 2020.  With judgment now final, the Plaintiffs timely appealed the interlocutory orders denying their initial and renewed motions for class certification.

## II.

By now, it is abundantly clear that the district courts enjoy wide latitude in deciding whether or not to certify a class, and our abuse-of-discretion review of class certification orders is accordingly deferential.  See, e.g., Hines v. Widnall, 334 F.3d 1253, 1257 (11th Cir. 2003).  Even so, this deference is not absolute.  We will reverse as an abuse of discretion a class certification order that represents a clear error of judgment, including because the district court followed improper procedures or applied the law in an unreasonable or incorrect manner.  See Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1305–06 (11th Cir. 2012).  Here, both of the

district court's alternative holdings denying the Plaintiffs' initial motion for class certification -- on timeliness and ascertainability -- were abuses of discretion. We therefore vacate this order and remand for further proceedings.[1]

A.

District courts have broad discretion to control their dockets and surely may deny class certification motions as untimely, such as when unreasonable delay causes prejudice to the opposing party. See McCarthy v. Kleindienst, 741 F.2d 1406, 1412 (D.C. Cir. 1984) ("[I]t was within the District Court's broad discretion to rely upon the untimeliness of the class certification motion, and the unfavorable consequences caused by the delay, as grounds for denying certification."). Under the circumstances of this case, however, the district court abused its considerable discretion in finding the Plaintiffs' motion for class certification to be untimely. For just under fifteen of the eighteen months between the December 13, 2017 filing of the initial complaint and the June 13, 2019 filing of the motion to certify, the PSLRA automatic stay rule prevented the Plaintiffs from conducting any discovery to support their motion for class certification.[2] The Plaintiffs, on the

---

[1] Accordingly, we do not address the propriety of the district court's order denying the Plaintiffs' renewed motion for class certification.

[2] Arguably, the PSLRA stay prevented the Plaintiffs even from filing a motion to certify without having first taken discovery. While some courts have interpreted the PSLRA stay of "all discovery and other proceedings" to cover only proceedings related to discovery, see Medhekar v. U.S. Dist. Ct. for the N. Dist. of California, 99 F.3d 325, 328 (9th Cir. 1996), others have interpreted "other proceedings" to include motions for class certification, see Winn v. Symons

11

facts of this case, were entitled to conduct some discovery before moving for class certification.  We have observed that district courts will "often . . . need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified."  Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008).  It is not as if the district court considered this to be a case in which the propriety of certification was readily discernible from the pleadings.  Indeed, it found that the class was not ascertainable precisely because the Plaintiffs had "failed to proffer any evidence that Centra Tech's records would be useful to identify class members."  Given the chance, the Plaintiffs may have been able to obtain such evidence during class discovery.  The PSLRA discovery stay did not permanently lift until June 7, 2019, just six days before the Plaintiffs filed their certification motion.

With the stay in effect during the bulk of the action's pendency, the Plaintiffs could not have moved for class certification any earlier than they did. Setting aside the swift six days it took the Plaintiffs to move after the denial of the final motion to dismiss (hardly a delay), the stay of all discovery applied except

---

Int'l Grp., Inc., No. IP 00-0310-C-B/S, 2001 WL 278113, at *2 (S.D. Ind. Mar. 21, 2001).  In an order confirming the PSLRA stay that came relatively late in the proceedings (on May 1, 2019), the district court in this case adopted a magistrate judge's report interpreting the PSLRA stay to apply only to discovery-related proceedings.  Our own Court has not directly addressed the scope of the PSLRA stay, and we need not and do not do so today.  Even assuming that the narrower, discovery-only interpretation is correct, the operation of the PSLRA stay in this case effectively prevented the Plaintiffs from moving for class certification any earlier than they did.

during two short windows: (1) one month and twenty days between the filing of the initial complaint and the motion to dismiss that complaint, and (2) one month and twenty-seven days between the grant of leave to amend the complaint and the filing of the motion to dismiss the amended complaint. The Plaintiffs could not feasibly have moved for class certification during these periods. The amended complaint added new securities fraud claims, while the initial complaint alleged only the sale of unregistered securities. In fact, a certification motion based on the updated allegations, now including claims of material misrepresentations in violation of the Securities Exchange Act of 1934, would have presented different issues than one based on the initial complaint. See Fed. R. Civ. P. 23(a), (b)(3) (requiring analysis of, among other things, whether "there are questions of law or fact common to the class," whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and whether "questions of law or fact common to class members predominate over any questions affecting only individual members").

During both windows when the possibility of discovery briefly remained open, the Plaintiffs lacked even the benefit of the defendants' answer, which would have informed a motion for class certification by responding to the factual allegations and specifying any affirmative defenses. See id. Moreover, these short windows did not provide sufficient time to take certification-related discovery.

13

Indeed, any certification motion brought during these early periods may well have been dismissed as premature.  See, e.g., Lopez v. Glob. Credit & Collection Corp., No. 17 CV 427, 2017 WL 4340098, at *2 (N.D. Ill. Sept. 29, 2017) ("The motion for class certification is premature—no factual development has occurred, no answer is on file, and plaintiff is not in a position to meet his burden to prove the viability of a class action."); Dickerson v. Lab'y Corp. of Am., Inc., No. 8:14-CV-1390-T-30TBM, 2014 WL 12774194, at *1 (M.D. Fla. July 23, 2014) (certification motion was premature because it "was filed prior to a response from Defendant and prior to the commencement of discovery"); Hornsby v. McDonald's USA, LLC, No. 8:14-CV-2288-T-30TBM, 2014 WL 12713358, at *1 (M.D. Fla. Oct. 7, 2014) (same).

Add to all of this that the Plaintiffs had no reason to believe they should have filed their class certification motion any earlier: the district court failed to set a deadline for filing the class certification motion.  In response to the district court's order, the parties timely filed a Rule 26(f) Joint Discovery Plan and Conference Report, but the district court did not enter a scheduling order.  This omission was a violation of the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida.  Fed. R. Civ. P. 16(b)(1)(A) ("[T]he district judge . . must issue a scheduling order . . . after receiving the parties' report under Rule 26(f) . . . .") (emphasis added); S.D. Fla. L.R. 16.1(b)(3) (providing,

14

with exceptions not relevant here, that "the Court shall enter a Scheduling Order as soon as practicable but in any event within sixty (60) days after the appearance of a defendant and within ninety (90) days after the complaint has been served on a defendant.") (emphasis added).  This deprived the Plaintiffs of any notice that their June 13, 2019 certification motion might be denied as untimely.  There was no federal or local rule deadline for certification motions.  The parties had every reason to believe that a June 2019 filing would be reasonable in this case; after all, the defendants' proposed schedule contemplated a certification deadline of June 14, 2019.  And the district court said nothing to dispel this understanding.[3]  See William B. Rubenstein, 3 Newberg on Class Actions § 7:5 (5th ed. Dec. 2020 Update) (hereinafter "Newberg") ("[I]n most cases, the court will address the timing of class certification at the initial case management conference[, which] often results in a timetable agreed upon by all of the parties setting out the deadlines leading to the class certification decision.").

---

[3] Given typical securities class action practices, it is not surprising that even the defendants thought an eighteen-month lapse between the initial complaint and filing a motion for class certification would be reasonable.  In securities class actions filed between 2000 and 2018, the median time from the filing of the initial complaint to the class certification decision was two-and-a-half years.  The time between the complaint and the certification decision was less than two years in only thirty percent of all cases and was less than one year in only four percent of cases.  Stefan Boettrich & Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (2019), https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf.  The Plaintiffs' motion to certify simply did not come late.

Moreover, the parties' understanding was reasonable in light of the general rules governing class action procedure. As we have explained, class action plaintiffs often require discovery to inform their class certification arguments, so it was perfectly reasonable for the Plaintiffs to believe they would not have to file their motion until some time after the lifting of the PSLRA discovery stay. Indeed, the defendants conditioned their suggested June 14, 2019 certification motion deadline on the expectation that the PSLRA discovery stay would lift by March 20. Federal Rule of Civil Procedure 23(c)(1)(A) previously required district courts to make a certification determination "as soon as practicable"; in 2003, the Rule was amended to require the district court to make a certification decision "at an early practicable time." 7AA Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1785.3 (3d ed. Oct. 2020 Update). In part, this change sought to allow "more time for class discovery." China Agritech, Inc. v. Resh, 138 S. Ct. 1800, 1807 (2018) (internal quotation marks and citation omitted). Thus, the current version of Rule 23(c)(1)(A) not only supports the expectation that plaintiffs will have some opportunity for discovery before moving for class certification; it also places the onus of ensuring a timely certification decision on the district court, rather than on plaintiffs.[4] Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable

---

[4] The Southern District of Florida repealed its previous rule requiring class certification motions to be filed within 90 days of the complaint in order "to conform to the December 2003 amendment to Federal Rule of Civil Procedure 23(c)(1)(A), which clarifies that a Court may

16

time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

To be sure, the Plaintiffs did not help themselves as much as they could have. They failed to mention the lack of any real opportunity for discovery in their certification motion or to move for limited relief from the PSLRA stay in order to conduct certification-related discovery, something they requested with respect to two other issues. But the district court was not without notice that the parties believed discovery was necessary to inform the class certification decision in this case. The joint Rule 26(f) report discussed the PSLRA stay and informed the court that discovery "would be significantly complicated by class certification issues," including "hard-fought" disputes "related to proof of commonality and typicality." Moreover, the Plaintiffs were not required to move for PSLRA stay relief in order to expedite the filing of a class certification motion; as we have discussed, it was not unreasonable for the Plaintiffs to simply wait for the PSLRA stay to expire before conducting class discovery and moving for certification.

Yet the district court denied the Plaintiffs the chance to do this: on June 7, 2019, the same day the PSLRA stay lifted upon the district court's denial of the last remaining motion to dismiss, the court ordered the Plaintiffs to move for

---

defer the decision on whether to certify a class if it is prudent to do so." In re: Amendments to the Local Rules, Admin. Order 2011-11, at 54 (S.D. Fla. Nov. 29, 2011).

default judgment against Centra Tech and Shutt, the only remaining defendants in the case,[5] by June 20.  Thus, events forced the Plaintiffs' class certification hand. If the district court entered final judgment against Centra Tech and disposed of the case before seeing a class certification motion, it would have deprived the Plaintiffs of their ability to obtain class certification and to pursue class-wide damages.  Therefore, they had to either move for class certification without any supporting discovery or forgo the opportunity to move for class certification at all. The Plaintiffs might have improved their lot by requesting relief from the order to move for default judgment or, again, by mentioning their difficult position in their certification brief.  Even so, despite our Court having previously concluded that discovery is "often" necessary before a class certification decision, Mills, 511 F.3d at 1309, the district court effectively required the Plaintiffs to move for class certification before they had any real chance to take any class discovery.  It then denied certification based in part on a lack of evidence of ascertainability, which the Plaintiffs might have been able to address with the aid of discovery.

All of this might have been within the district court's ample discretion if there were any sound reasons for finding the certification motion to be untimely even in the absence of a deadline, but there weren't.  See Newberg § 7:7 (in deciding whether to accept a late certification motion, courts consider "the

---

[5] Regarding Shutt, the Plaintiffs instead elected to dismiss their claims.

18

circumstances causing the delay" and "whether the opposing parties have been prejudiced by the delay"). The district court noted that the Plaintiffs filed their motion eighteen months after the initial complaint and had provided "no excuse or justification for this delay." But as we have explained, considering the posture of this case, the eighteen-month lapse was not a "delay" that required any justification. More troubling, the district court stated that "the Plaintiffs' delay appears to be a deliberate decision to file the motion when it would be unopposed by a defaulting defendant." Yet the record belies this conclusion. The Clerk entered default against Centra Tech on January 31, 2019, so if the Plaintiffs were indeed playing a delay-until-default game, there was no reason for them to wait until June to file their certification motion. The district court did not mention any other way in which the timing might have prejudiced the defendant; nor has Centra Tech cited any. Indeed, Centra Tech did not so much as raise timeliness as a reason for denying the Plaintiffs' motion for class certification when it filed its response in opposition. Rather, Centra Tech argued that arbitration provisions barred the action, that the named plaintiffs lacked standing and could not meet the substantive requirements of Rule 23, and no more.

In short, the Plaintiffs could not practically have moved for class certification any earlier than they did. Effectively, they had no choice but to move prematurely. The Plaintiffs did not miss any class certification deadline, and their

19

timing did not prejudice any party. On this record, the district court's denial of the Plaintiffs' class certification motion as untimely was an abuse of discretion.

B.

The district court's alternative holding on the Plaintiffs' initial motion for class certification, that the proposed class was not sufficiently ascertainable, was also an abuse of discretion.

In their motion, the Plaintiffs proposed the following three subclasses:

(1) All persons and entities who purchased CTR Tokens directly from Defendant Centra Tech during Centra Tech's official initial coin offering from approximately June 23, 2017 through October 5, 2017;

(2) All persons and entities who purchased CTR Tokens directly from Defendant Centra Tech during the remainder of Centra Tech's initial coin offering from approximately October 6, 2017 through April 20, 2018; and

(3) All persons and entities who purchased CTR Tokens on the open market as a result of Defendant Centra Tech successfully soliciting their purchases of CTR Tokens.

Relying on our unpublished decision in Karhu v. Vital Pharms., Inc., 621 F. App'x 945, 947 (11th Cir. 2015), the district court reasoned that the Plaintiffs had to demonstrate an "administratively feasible" method of identifying class members that was "manageable" and did "not require much, if any, individual inquiry." The court held that the Plaintiffs could not meet this requirement merely by referring to a spreadsheet "that was provided to the government in the criminal case [against the founders of Centra Tech] which provide[d] information regarding over 3,500

20

purchasers of Centra Tech Tokens." The spreadsheet as described in the criminal complaint "would only partially cover one of the three subclasses" (the first ICO purchaser subclass), and there was no guarantee that the government would agree to share the spreadsheet with the Plaintiffs. Moreover, the district court reasoned that the "Plaintiffs [had] failed to proffer any evidence that [other Centra Tech] records would be useful to identify class members." And their suggestion of drawing on information gleaned from currency exchanges did not help because "[t]he world of cryptocurrency and currency exchanges is a highly technical area and the Plaintiffs would need to explain to the Court how currency exchanges work, what information is stored, and how the Plaintiffs would access this information to identify potential class members."

The district court was right to inquire into whether the proposed subclasses were "adequately defined and clearly ascertainable" before it considered the express requirements of Rule 23(a). Cherry, 986 F.3d at 1302 (internal quotation marks omitted). But after the district court's decision, we held in Cherry that "administrative feasibility is not a requirement for certification under Rule 23." Id. at 1304. In fact, the words "administrative feasibility" are nowhere to be found in Rule 23. Cherry thus clarified that "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." Id. at 1304. While Rule 23 implicitly requires that class membership must be

21

ascertainable since a court cannot determine issues such as commonality or typicality if class membership is defined in vague terms, "membership can be capable of determination without being capable of *convenient* determination." Id. at 1303. Administrative feasibility may be relevant to "the manageability criterion of Rule 23(b)(3)(D)," but that provision requires a "comparative" analysis that is incompatible with a threshold, standalone administrative feasibility requirement. Id. at 1304. The court must weigh any manageability concerns against the advantages of proceeding as a class action. Id. at 1304–05. We thus rejected Karhu's requirement that a Plaintiff explain to the district court exactly how the class members can be identified in a convenient manner. Id.

Plaintiffs' proposed subclasses easily meet the Cherry standard for ascertainability. Membership in each of the subclasses turns on the objective, verifiable criterion of having purchased a particular security within a particular date range. The token purchaser spreadsheet identified many class members, and others could have been identified through additional Centra Tech ICO records or submission of claims forms verified by transaction records. Perhaps the third subclass, open market purchasers, would have presented some difficulty, but even so, the district court should have asked whether membership was "capable of determination" rather than rejecting the Plaintiffs' arguments on this front simply because they had not explained precisely how they would access cryptocurrency

22

exchange information to identify class members. Since application of an incorrect legal standard is an abuse of discretion, id. at 1300, the district court's application of the Karhu heightened ascertainability standard cannot stand.

Neither of the district court's reasons for denying the Plaintiffs' initial motion for class certification withstands abuse-of-discretion review. Accordingly, we **VACATE** the district court's order denying the initial motion for class certification and **REMAND** for further proceedings consistent with this opinion. We also necessarily **VACATE** the final judgment.[6] We do not disturb, however,

---

[6] Even though the named plaintiffs have received a favorable judgment on their individual claims, there remains an ongoing controversy with respect to their asserted right to represent the interests of the proposed class. "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." Deposit Guar. Nat. Bank v. Roper, 445 U.S. 326, 333 (1980). But this rule "does not have its source in the jurisdictional limitations of Art. III," so, in certain circumstances, even a party who has prevailed on the merits in district court may appeal from an adverse collateral aspect of the judgment -- "so long as that party retains a stake in the appeal satisfying the requirements of Art. III." Id. at 333–34. Thus, in Roper, the Supreme Court held that named plaintiffs could appeal a district court's order denying class certification even though the district court had entered final judgment awarding them damages on their individual claims. The defendants had tendered these amounts and the district court had entered judgment even though the named plaintiffs objected. Id. at 330; see also Microsoft v. Baker, 137 S. Ct. 1702, 1711 (2017) (plaintiffs met with a denial of class certification may "litigate[] the case to final judgment and then appeal[]" the adverse certification decision.).

Like in Roper, the district court's judgment in this case awarding damages on the named plaintiffs' individual claims did not grant them relief regarding their "continuing individual interest in the resolution of the class certification question." 445 U.S. at 336. At the very least, the named plaintiffs in this case retain an "individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." See id.; see also Love v. Turlington, 733 F.2d 1562, 1565 (11th Cir. 1984) ("[A] class action plaintiff presents two separate issues for judicial resolution: the claim on the merits, and the claim that he is entitled to represent a class."). This concrete interest saves this case from mootness and is sufficiently

the district court decisions not before us on appeal, such as its determinations about Centra Tech's liability to the named plaintiffs. Roper, 445 U.S. at 336 (appellate jurisdiction in an appeal of an order denying class certification is limited to the certification issue and does not extend to "the merits of the substantive controversy"). Nor do we express any view on the propriety of class certification in this case other than with respect to the timeliness and ascertainability holdings in this opinion.

related to the named plaintiffs' "personal stake in the appeal" to confer federal appellate jurisdiction. Roper, 445 U.S. at 336, 340; see also Love, 733 F.2d at 1564–65 (named plaintiff's settlement of her individual claim did not moot her appeal from a denial of class certification); Eisenberg v. Gagnon, 766 F.2d 770, 784–85 (3d Cir. 1985) (holding there was "no bar" to named plaintiffs' appeal of a class certification denial even though they had obtained individual relief on the merits in the form of a default judgment against one defendant and trial victories over others, because "at a minimum" they retained an interest in shifting litigation costs if a class ultimately prevailed), superseded by rule on other grounds as stated in Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 483 (3d Cir. 2018); cf. Hines, 334 F.3d at 1257 ("Although [the named plaintiffs] all settled individual claims . . . they still have standing to appeal the denial of certification because the settlement agreement preserved their right to appeal the class certification decision."). Importantly, the named plaintiffs moved for default judgment against Centra Tech only because the district court ordered them to do so; they did not, for example, consent to a defendant's offer of judgment and waive their right to appeal. See Shores v. Sklar, 885 F.2d 760, 762–63 (11th Cir. 1989).

Thus, the district court's judgment awarding damages on the named plaintiffs' individual claims did not grant them relief regarding their claim that they are entitled to represent a class. In fact, the interlocutory orders denying class certification merged into the final judgment, see id. at 763, so the final judgment resolved this claim against the named plaintiffs. Put another way, the final judgment did not give them, and in fact denied a portion of the "complete relief" they requested. See Radha Geismann, M.D., P.C. v. ZocDoc, Inc., 909 F.3d 534, 543 (2d Cir. 2018). The named plaintiffs may, therefore, obtain reversal of the portion of the district court's judgment precluding them from representing the putative class and continue to pursue class certification (and, if successful, merits relief on behalf of the class).

24

**VACATED AND REMANDED**.